378 So.2d 127 (1979)
Mrs. Madlyn M. Clague, widow of Harold J. FRISARD, Sr., et al.
v.
Weldon A. HEISSER.
No. 10032.
Court of Appeal of Louisiana, Fourth Circuit.
May 4, 1979.
On Rehearing January 10, 1980.
Morris B. Phillips, New Orleans, for Mrs. Madlyn M. Clague, widow of Harold J. Frisard, Sr., et al., plaintiffs-appellants.
John S. Keller, Keller & Goliwas, New Orleans, for Weldon A. Heisser, defendant-appellee.
Before GULOTTA, BOUTALL and SCHOTT, JJ.
BOUTALL, Judge.
This is a case involving foreclosure under an acceleration clause for failure to pay property taxes and to insure the property.
Weldon Heisser, appellee, purchased a piece of property from the heirs of Harold J. Frisard, Sr. on October 30, 1974. A mortgage on the property was given to the vendors in the agreement. Under the terms of the agreement, it was the responsibility of the mortgagor to pay all taxes on the property and to insure the property against loss. The dispute between the parties first arose in January of 1975 when appellee requested that Harold Frisard, Jr., one of the appellants herein, have an insurance agent, familiar with the property contact him. John Cresham, the agent who spoke with appellee at Frisard's request, claims that he took an application from appellee for $71,000 of insurance coverage on the mortgaged property and that the policy with Travelers Insurance Company was effective from February 15, 1975 to February 15, 1976 at an annual premium of $904. Appellee, on the other hand, contends that he merely asked for a quotation of a premium and entered into no agreement. He refused to pay the insurance premium and subsequently insured the property with another company in May of 1976. Appellants paid the premium on the Travelers' policy themselves, and were never reimbursed.
An additional dispute arose in September of 1976. Appellants learned that the property taxes for 1976 had not been paid and requested that Heisser furnish them with a copy of the "paid tax bill". When the 1977 tax bills were sent out in January of 1977, no copy of the paid 1976 bill had been furnished to appellants. Appellants' attorney then wrote Heisser a certified letter, dated January 13, 1977, demanding that the paid 1976 and 1977 tax bills be presented to appellants by February 1, 1977, the date upon which the 1977 bill became delinquent.
*128 The letter stated that it was appellant's intention to file suit if the tax bills and the insurance premium discussed above were not paid by February 1st. Appellants received no reply.
The evidence shows that appellants paid the taxes themselves on February 17, 1977. Appellee had, however, already paid the taxes. The 1976 taxes were paid on February 8, 1977 and the 1977 taxes were paid on February 16th. Appellants then filed suit for executory process on March 2, 1977, but the seizure and sale were enjoined by the court on March 29th. On April 13th appellants filed this suit for ordinary process seeking a judgment for the entire amount owed, computed at $120,431.06, plus attorney's fees, interest, and costs, and recognition of the vendor's lien and mortgage, contending that Heisser defaulted under the terms of the contract by failing to pay the taxes, by failing to comply with timely demands to insure the property and reimburse insurance premiums paid, and by failure to furnish appellant with documents showing payment of taxes and insurance coverage.
The trial court refused to accelerate the debt, but found that Heisser was indebted to appellants for insurance premium and taxes and awarded judgment in the amount of $2,146.98, plus attorney's fees, interest and costs. Appellants bring this appeal contending that the refusal of the trial court to accelerate the debt was error. Heisser does not appeal from the judgment, nor does he answer this appeal. The only issue before us, therefore, is the correctness of the trial judge's refusal to accelerate the debt and award the entire amount due under the contract and his refusal to recognize the vendor's lien and mortgage.
The contract contains the following language:
"And the said purchaser declared that he does hereby specially covenant and agree to the faithful fulfillment of the following stipulations in favor of the vendor and any future holder of the note secured by this instrument, to-wit:
* * * * * *
"SECOND: To keep the buildings and improvements on the property hereby mortgaged and hypothecated constantly insured against loss by fire, tornado and explosion, and against loss in such other forms of insurance as may be required by the vendor or by the holder of the said note in amounts satisfactory to the vendor or to the holder of said note until the full and final payment of the said note * * * and to deliver all of the said policies to the vendor or to the holder of the said note and to pay, before the same shall become delinquent, all taxes, paving, improvement and assessments, local or otherwise, which may be levied on said herein conveyed property, and all taxes, assessments or charges which may be levied on the note secured hereby, or the interest thereon, and to present the vendor within ten days after demand, receipts evidencing the payment of such taxes, assessments or charges.
* * * * * *
"FOURTH: Failure by the purchaser to promptly pay any one of the installments of principal or interest of the said note, or in case of default on the part of the purchaser in the performance of any one of the above covenants and agreements * * * then and in either or in any such event the whole indebtedness hereby secured shall, at the option of the vendor or any future holder of the said note, at once mature and become due and exigible, anything herein to the contrary notwithstanding, * * *."
It is clear from these provisions that one option of the appellant-vendor is to foreclose on the entire mortgage should the purchaser breach the agreement.
We find that the appellee was placed in default as to the taxes due on the property by the demand letter sent by appellant's attorney to appellee. Appellee's failure to pay the taxes and to furnish copies of the tax bills gave appellant the option to sue for the entire debt under the unambiguous terms of the agreement. We also find that appellants exercised the option within a reasonable period of time so as not to prejudice *129 the rights of the mortgagor. See 59 C.J.S. Mortgages § 495.
Appellee urges us to adopt the rule that payment of the taxes after default but before suit is brought cures the default, thereby taking away the right to proceed. We reject this rule due to the fact that it renders the default meaningless and sets up a "race to the courthouse" situation. We find nothing in the law which invalidates the provision agreed to by the parties and, as such, we enforce the contract. The fact that there were numerous requests by the mortgagees asking the owner to pay the taxes over a six month period with no response does not lead to the conclusion that the mortgagees would gain an unconscionable advantage by foreclosure in this case.
Because we find that appellants have the right to accelerate the debt due to the default of appellee in failing to pay the property taxes, it is unnecessary for us to consider whether or not appellee was in default as to the insurance.
Accordingly, we hold that the judgment appealed is in error in not granting appellant's right to accelerate the entire amount owing on the mortgage and recognizing appellant's privileges. It is therefore ordered that there is judgment rendered in favor of appellants, Mrs. Madlyn M. Clague, widow of Harold J. Frisard, Sr., et al., against appellee, Weldon A. Heisser in the sum of $120,431.06, with 7% per annum interest from February 1, 1977, until paid, plus 15% of principal and interest as attorney's fees, and all costs of these proceedings; further, that appellant's mortgage and vendor's privilege upon the real property described in the Act of Credit Sale passed before Benjamin Washastrom, Notary Public, dated October 30, 1974, registered in C.O.B. 727 folio 312, M.O.B. 2248 folio 639, Parish of Orleans is recognized and made enforceable, to-wit:
"A CERTAIN PORTION OF GROUND, together with all the buildings and improvements thereon, and all the rights, ways, privileges, servitudes and advantages thereunto belonging or in anywise appertaining, situated in the Third District of this City, on the south side of New Orleans Rigolets Highway, also known as the New Chef Menteur Highway Road, going from the City, and measuring one hundred twenty-two and eighty-five one hundredths feet (122.85') front on NEW ORLEANS RIGOLET HIGHWAY, by a depth of four hundred fifty-five and nine one-hundredths feet (455.09') on the West side or side towards the City of New Orleans, and a depth on the other side or eastern side of four hundred forty-nine and fourteen one-hundredths feet (449.14'), with a width in the rear and fronting on Gentilly Road, of one hundred twenty-three and sixty-four one hundredths feet (123.64') as delineated on a certain plan and certificate of survey made by J. H. Coates, C. E., dated August 25, 1930, and annexed to an act of sale passed before Jeanne M. Hartel, Notary Public, on April 22, 1931; said portion of ground forming part of the original lot No. 27, designated as such on a plan of L. H. Pilie, Surveyor, dated March 8, 1859, deposited in the office of Euseby Bouny, late Notary in this City.
"The improvements thereon are designated by the Municipal No. 7914 Chef Menteur Highway, New Orleans, La.
"According to a plan of survey made by C. A. Robert, C. E. & S., dated Sept. 30, 1954, a blue print of which is annexed to act of Edward Haspel, N. P., Orleans Parish, dated Aug. 31, 1954, registered in C.O.B. 601, folio 85, for Orleans Parish, which plan has also been filed in the Conveyance Office for Orleans Parish and registered in Book 599, folio 245, on account of Old Gentilly Road being widened the actual depths are four hundred and forty-five and sixty-five one hundredths feet (445.65') on the West side or the side towards the City of New Orleans, and a depth on the other side or Eastern side of New Orleans of four hundred and forty feet (440.00')."
REVERSED IN PART, AND JUDGMENT RECAST.

*130 ON REHEARING
PER CURIAM.
The court having reconsidered this matter, we are of the opinion that the original opinion is correct and is reinstated.