430 So.2d 756 (1983)
BANK OF LOUISIANA
v.
The YOLO CORPORATION.
No. 82-CA-61.
Court of Appeal of Louisiana, Fifth Circuit.
April 11, 1983.
*757 John H. Gniady, Bagot & Gniady, New Orleans, for Bank of Louisiana, plaintiff-appellant.
Frank J. Uddo, New Orleans, for Yolo Corp., defendant-appellee.
Before BOUTALL, CURRAULT and GRISBAUM, JJ.
BOUTALL, Judge.
This case arises from foreclosure under an acceleration clause by a bank against a corporation. From a judgment granting the defendant a permanent injunction prohibiting the plaintiff from seeking executory process the plaintiff has taken this appeal.
The Bank of Louisiana (the bank) made a loan of $180,000 on June 28, 1972 to the Yolo Corporation (Yolo) in connection with a credit sale by the bank of land and buildings in Jefferson Parish. The mortgage note provided for annual interest of 8% and for monthly payments over 15 years of $1,720.50 each, to be applied first to accrued interest and then to principal. The note contained an acceleration clause in the case of failure to pay any installment promptly, a confession of judgment, and a stipulation of 10% attorney's fees if the sale was referred to an attorney for collection.
On June 19, 1981 the bank made demand for the full balance of the note plus accrued interest, $101,028.66, alleging Yolo failed to make the monthly payment that was due on May 28, 1981. The bank gave the defendant ten days from date of the letter to make payment in full. Meanwhile Yolo had mailed a check dated June 15, 1981, marked "June# XXXXXXX-XX" to the bank; the bank received it on June 22 and returned it June 24 because the check was not for full payment.
The bank filed a petition for executory process on August 17, 1981, alleging that the note was past due and demand for payment had been made. On September 9, Yolo sued for an injunction to arrest seizure and sale under executory process, requesting a temporary restraining order. Yolo averred that payments on the loan were current and that payments were then being made timely "under order of consignment dated August 12, 1981" into the registry of the court. A temporary restraining order was signed on September 9. The matter was heard on March 5, 1982 and March 23, 1982 after numerous continuances and was taken under advisement by the court. The judge rendered judgment in favor of the defendant on May 19, 1982, permanently enjoining the plaintiff from seeking executory process, the parties having stipulated that a ruling in defendant's favor would have the effect of granting a permanent injunction. This appeal followed.
The basic issue on appeal is whether the bank's erroneous record keeping and activities obscured the true state of the account so as to enjoin executory process. It was the bank's position that 107 payments should have been made from the first due date, July 28, 1972, through May 28, 1981, but Yolo had made only 105 payments. Yolo alleges that credit was not given for two payments, and that it had made 107 payments.
The trial judge, in his Reasons for Judgment, said:
"The Court is of the opinion that the plaintiff has failed to show that they are entitled to executory process herein. Their plight appears to be a result of computerization and the snares that often engulf users of this marvelous but occasionally erroneous device.
"The evidence showed the Court at least four instances where serious errors were made in the accounting process of defendant's records. At other times plaintiff arbitrarily changed the due date on their note in order to have it coincide with the dictates of the computer."
*758 The plaintiff-appellant complains that the judgment is not responsive to the issue of whether or not the defendant-appellee was in default on the date of demand. Shortly before the hearing on the injunction, the bank furnished Yolo with a payment history of the loan, beginning with the first due date, July 28, 1972, through the last payment received, May 13, 1981. After Yolo's bookkeeper, Mrs. Janice Montgomery, had checked the list of payments against her bank statements she narrowed the two payments she believed to be uncredited to one in 1975 and one in 1978. The court in the first hearing and with the parties' approval, limited the issue to these two payments.
Mrs. Montgomery produced in court a cancelled check, dated November 21, 1975 and stamped by the Bank of Louisiana on November 25, for a payment that was not listed in the payment history. Counsel for the bank admits in his brief that the bank's error in omitting the payment "is apparent on the face of the documents presented into evidence."
The second payment in question is one made on February 15, 1978, but credited by the bank to an inactive checking account that had been opened by the defendants in 1972 and not used since. Lester Plaisance, assistant vice-president of the Bank of Louisiana in charge of commercial loans, testified for the plaintiffs. He indicated that although the check had been incorrectly deposited when received it had been applied to the loan on May 10, 1978 and was listed in the payment history on that date. In response to questioning by the plaintiff as to Yolo's cancelled checks for 1978 payments, introduced into evidence by the bank, Mrs. Montgomery admitted that she had made only twelve payments in 1978. Each check, with its cancellation date, was tallied against the bank's list of payments and dates. When shown the May 10 entry, she agreed that it was for the February 15 check, but said that only on the second hearing day had she understood where the alleged delinquency lay:
Q. "... and then on the third month, on May 10th, 1978, that was credited to your loan, according to the schedule of credited payments that I have provided you, is that correct?"
A. "Evidently it's correct ... the bank, you know, didn't start sending the bills that I was late, that I missed a payment or anything."
.... "I mean after this was cleared I had no problem at that point."
"... I assumed you had missed the check, that you missed a payment somehow."
"... and then, you know, you've explained this just today."
Although the bank's payment history indicated that the loan was delinquent by at least one payment from November 28, 1975 forward, the bank did not demand that payment over the years. Then computerized monthly payment notices for August, September, October, and December, 1980 showed that the entire installment due was to be applied to interest alone, when previously the installments were applied to interest and principal. The bank's witness testified that this was because the payments were in arrears at that point. Yolo argues that if such were the case, similar notices should have been sent, beginning with the 1975 uncredited payment. Inexplicably, notices for February, 1981 and May, 1981, when the payment history showed Yolo to be two months behind in payments, indicated the greater part of the installment due was to be applied to principal. Another computer error occurred when the notices suddenly began showing different due dates from the twenty-eighth day of each month as specified by the note.
We find that the bank's accounting errors were of sufficient magnitude and frequency in this case as to cast doubt upon the credibility of its records and also to make it difficult at best for Yolo's bookkeeper to keep apprised of the loan's status. The bookkeeper believed until the second hearing date that she had made all the installments required to keep the loan current.
The bank cites Frisard v. Heisser, 378 So.2d 127 (La.App. 4th Cir.1980, writ denied, *759 381 So.2d 1231) as authority for its right to accelerate the note after placing the appellee in default, and to disregard the appellee's deposit of monthly payments into the court's registry. In Frisard the mortgagee foreclosed upon the mortgagor under the terms of the note for the full amount owed. The appellate court upheld enforcement of the acceleration clause. The facts of the Frisard case are distinguishable from the one before us in that the plaintiff had made demand on the defendants over a period of several months to insure and pay taxes timely on a mortgaged building. The plaintiff resorted to executory process when its demands were not met after due date.
The court in Frisard stated, at 128:
"... Appellee's failure to pay the taxes and to furnish copies of the tax bills gave appellant the option to sue for the entire debt under the unambiguous terms of the agreement. We also find that appellants exercised the option within a reasonable period of time so as not to prejudice the rights of the mortgagor. See 59 C.J.S. Mortgages Section 495."
It found that defendant's payment of the taxes after default did not cure the default and the plaintiff was entitled to proceed in its foreclosure. It indicated that notice was a factor in its decision and said, at 129:
"... The fact that there were numerous requests by the mortgagees asking the owner to pay the taxes over a six month period with no response does not lead to the conclusion that the mortgagees would gain an unconscionable advantage by foreclosure in this case."
The record in the instant case indicates that, because of the bank's erroneous actions, the mortgagor was not aware of being delinquent when the bank demanded full payment. Although generally a defendant has the burden of alleging and proving payment, he is entitled to know what he must defend against. In executory process the plaintiff must produce proof of the breach of the conditions of the mortgage maturing the obligation. C.C.P. art. 2637. It was only at trial that it was finally determined which specific payment was at issue. Prior to that time defendant was forced to try to interpret the bank's faulty records to guess at which payment in a nine-year history of payment was delinquent. Justice will not allow the mortgagee bank to take advantage of its mortgagor by accelerating the note and using executory process, when the bank itself, through its accounting errors, created a situation of uncertainty regarding the status of the loan. We find no reason to disturb the judgment of the trial court.
Accordingly, the judgment appealed from is affirmed.
AFFIRMED.