YELVERTON, Judge.
There are two issues presented by this appeal of the trial court’s refusal to issue a preliminary injunction to stop the sale of immovable property under executory process. The first issue questions whether the establishment of a course of conduct between the parties to a mortgage tolerating late payments entitled the mortgagor to a warning, under the “doctrine of forbearance”, as a condition precedent to exec-utory process based on a single late payment. The second issue questions whether the breach of a provision in a mortgage affecting immovables, requiring the mortgagor to provide fire and extended coverage insurance with a loss-payable endorsement in favor of the mortgagee, is ground for acceleration of the installment note which the mortgage secures, and consequent executory process, when the mortgagor fails, after repeated demand, to provide the loss-payable endorsement. The trial judge did not make a specific finding as to the first issue, but ruled in favor of the mortgagees as to the second issue, and refused to enjoin the sale under executory process. We will discuss both issues in this opinion. We affirm the trial court, agreeing with him that the breach of the *402 obligation described in the second issue authorized executory process, and that he correctly refused to enjoin the sale. We affirm, but remand, since the decision appealed was a judgment denying a preliminary injunction, and the defendants still have a right to a trial on the merits of their demand for a permanent injunction.
Leonidas Holt and Mildred Gibson Holt sold some property in 1978 to Walter A. Fletcher and Ruth A. Harvard Fletcher. Part of the price was a promissory note for $25,000 payable in monthly installments of $249.19 each on the 13th day of each month. The note was secured by mortgage on the property sold. The mortgage contained an acceleration provision in the event of failure to pay any of the notes or installments when due, or the failure to pay interest promptly when due, or the failure to pay the taxes on said property before delinquent, or the failure to keep buildings on the mortgaged property insured. A further provision in the mortgage required that the Fletchers keep the improvements on the property insured against loss by fire and extended coverage insurance for at least $15,000, loss, if any, payable to the holder of the note, as his interest may appear.
After the death of Walter A. Fletcher, I.J. Daigle was appointed administrator of Fletcher’s succession, and he commenced making the installment payments, signing and delivering nine monthly checks from December 1982 through August 18, 1983. Only three of these nine checks were on time. The other six were late by anywhere from one to seven days.
The Holts refused to accept the August 1983 payment. They brought executory proceedings to enforce their mortgage, claiming the full balance due on the note was accelerated because (1) the August installment was not paid on time, and (2) no fire and extended coverage insurance policy had ever been issued naming them as loss payees.
Following the seizure of the property in the executory proceedings, the succession administrator obtained a temporary restraining order enjoining the scheduled sale of the property, and provoked a hearing on a rule to show cause why a temporary injunction should not issue. After this hearing, the trial judge denied a temporary injunction, and the succession administrator took this appeal.
The evidence taken at, the hearing on the rule shows that the administrator of the succession was also the insurance agent who obtained for the Fletchers a fire and extended coverage insurance policy on the improvements situated on the mortgaged property. From a review of the testimony at the hearing on the rule for a temporary injunction, it appears that there was always insurance coverage, in more than the minimum amounts required by the mortgage, but that the Holts had never been named loss payees on the policy. In March 1983 Mr. Holt, concerned about Fletcher’s death and the security of the mortgaged property, inquired of Mr. Daigle about insurance, and Daigle told Holt that the property was covered, and even gave him a copy of the policy. About two weeks later the Holts, noticing that they were not named on the policy as loss payees, called Daigle about this and were assured that that would be simple to correct, and that an endorsement would be sent to them naming them as loss payees. Despite further efforts during the spring and early summer of 1983 to obtain the loss payable endorsement, the Holts were unsuccessful. At the trial of this matter, they had not yet received a loss payable endorsement.
The trial judge believed that it was the breach of the agreement to provide insurance designating them as loss payees, much more than the slight tardiness in meeting the monthly payments, that prompted the Holts to bring foreclosure proceedings, and the trial judge concluded that the Holts were legally entitled on these facts to bring foreclosure proceedings.
The trial court gave consideration to the rule announced in Sternberg v. Mason, 339 So.2d 373 (La.App. 1st Cir.1976), writ denied 341 So.2d 901 (La.1977), as follows:
*403 “An obligee is, of course, entitled to have the contract strictly complied with and to receive his payments promptly when due. However, when there has developed a course of conduct, i.e., routine late payments without complaint or objection over an extended period of time sufficient to create a justifiable belief that it is of no moment, it is essential in the interest of fairness that the obligee make known to the obligor his intent to discontinue acceptance of late payments.”
Applying this rule to the present facts, the trial judge felt that the acceptance of late payments, following the death of Fletcher, had been “the result of gratuitous, but unwilling, indulgence on the part of the Holts”, and that it was therefore “a close case on the issue of whether the creditors were estopped” under the Sternberg rule. However, the trial judge found that it was “exceedingly clear ... that they [the Holts] were entitled to bring the suit by executory process as a result of the breach relative to the insurance coverage.”
The Sternberg rule is based on fairness. Nolan J. Cunningham Apartments, Inc. v. Dupre, 428 So.2d 1046 (La.App. 1st Cir. 1983). In that case, after 15 monthly installments were paid, of which five and possibly six of the nine most recent installments were made after the monthly due date, the First Circuit held that the holder of the note could not, without making known his intent to discontinue acceptance of late payments, simply foreclose after one late payment, and that a casual conversation concerning late payments was insufficient to qualify as notice that late payments would no longer be tolerated. Similarly, in Fred H. Moran Const. Corp. v. Elnaggar, 441 So.2d 260 (La.App. 1st Cir. 1983) it was held that a series of 10 monthly payments, three of which were on time and the other seven ranging from one to 17 days late, established a course of conduct that tolerated routine late installment payments without complaint, and that the doctrine of forebearance could successfully be raised to a foreclosure brought 11 days after the due date of the 11th payment. On the other hand, McCarthy v. Louisiana Timeshare Venture, 426 So.2d 1342 (La. App. 4th Cir.1982), held that a “course of conduct” between the parties was not established when only three payments had been made on a note, the first one early and the other two late by eight and 11 days, respectively.
In the light of the reasoning in the above decisions, and our review of the facts, we do not agree with the trial court that it is a close question whether the doctrine of forebearance applies in the instant case. We think the doctrine applies. However, this makes no difference to the outcome, because we agree with the trial judge’s decision as to the second issue, which supports the mortgagees’ right to executory process.
Concerning the second issue, the trial judge found as a fact, and we find no clear error, that the Holts indicated their concern on more than one occasion to the administrator about the absence of a loss payable attachment to the insurance policy. Apparently, insurance coverage had been provided, in accordance with the mortgage requirements, ever since the note was made back in 1978, but a loss payable attachment had never been executed in favor of the Holts. Whatever acquiescence in this matter might have occurred before the death of Fletcher, the evidence clearly supports the trial judge’s conclusion that after his death, the Holts became more concerned about their security, wondering what would happen in case of a physical loss of the property and wondering how they would be protected to the extent of their mortgage interest. It was this concern that prompted their repeated requests for a loss payable endorsement, and the assurance by Daigle who, as stated earlier, was both the administrator of the succession and the insurance agent in the case, that such an endorsement would be forthcoming. It was only after several weeks had elapsed, and the endorsement was not received, that the Holts started executory proceedings.
*404 We likewise agree with the trial judge that there is no question the Fletchers undertook the obligation in the mortgage instrument to provide insurance with a loss payable provision to the holder of the note, as his interest might appear. The mortgage instrument reads:
“Vendee agrees to keep the improvements on the within described property insured against loss by fire and extended coverage insurance for at least Fifteen Thousand ($15,000) Dollars, loss, if any, payable to the holder of the within described note, as his interest may appear.”
The acceleration language in the mortgage reads as follows:
“In the event of failure to pay any of said notes or said installments when due, or the failure to pay interest promptly when due, or failure to pay the taxes on said property before delinquent or failure to keep said buildings insured, then, and in that event, each and all notes shall immediately become due and collectible at the option of the holder.”
An insurance policy without a loss payable clause would not protect the mortgagees’ interest. The administrator’s argument that the above language required the mortgagor only to keep the property insured, under penalty of acceleration for failure to do so, and that the failure to provide a loss payable endorsement was not a mortgage agreement the violation of which would give rise to acceleration, overlooks the fact that without the loss payable clause, the insurance would give no protection to the mortgagee.
We see no difference in principle between this result and the holding in Frisara v. Heisser, 378 So.2d 127 (La.App. 4th Cir.1979), writ denied 381 So.2d 1231 (La.1980). In that case the mortgagee foreclosed, enforcing the acceleration clause, based on the mortgagor's failure to pay the taxes and to furnish copies of the tax bills. That court held that the mortgagee had made demand on the mortgagors over a period of several months to insure and pay taxes timely on a mortgaged building, and that the mortgagee exercised its option to sue for the entire debt under the unambiguous terms of the agreement.
We likewise find that because of the unambiguous terms of the agreement by which the Fletchers obligated themselves to provide insurance with a loss payable endorsement in favor of the Holts, and because of the repeated failure after demand by the Holts that a loss payable endorsement be supplied with the insurance, and because of the failure of the administrator of the estate, who was also the insurance agent, in violation of his promises, to supply the endorsement, the Holts had the contractual right to accelerate the entire indebtedness and to proceed by executory process.
The judgment of the trial court rejecting the administrator’s petition for a temporary injunction is, for these reasons, affirmed. However, we must remand the case for a trial on the merits on the petition for a permanent injunction. See Cromwell v. Commerce and Energy Bank of Lafayette, 464 So.2d 721 (La.1985). We must remand because the parties did not stipulate that the court’s decision regarding the preliminary injunction would preclude a trial on the merits of a permanent injunction, and it was heard only on the issue of whether the administrator was entitled to a preliminary injunction. We find no waiver in the record by the administrator of his right to a trial on the merits, and, therefore, the administrator still has that right.
The costs of this appeal shall be paid by the succession.
AFFIRMED, AND REMANDED FOR TRIAL ON THE MERITS.