488 So.2d 209 (1986)
CHRYSLER CREDIT CORPORATION
v.
Debra Polk WALKER and Wallace Walker.
No. CA 2724.
Court of Appeal of Louisiana, Fourth Circuit.
January 15, 1986.
On Rehearing April 23, 1986.
*210 Roger B. Jacobs, Jacobs, Loeffelholz & Trestman, New Orleans, for plaintiff.
Kim A. Gandy, New Orleans, for defendants.
Edmund T. Wegner, Jr., New Orleans Bar Ass'n and the Notaries Ass'n of New Orleans, New Orleans, amicus curiae.
Before REDMANN, C.J., and SCHOTT and BARRY, JJ.
REDMANN, Chief Judge.
Plaintiff appeals from the dismissal of its suit for a deficiency judgment after executory process and an award to defendants of damages and attorney's fees. Defendants answered the appeal, asking increased damages, attorney's fees for the appeal, and costs.

I.
La. C.C.P. 2635 provides that one seeking executory process "shall submit with his petition the authentic evidence necessary to prove his right to use executory process...," including "authentic evidence of: ... (3) The act of mortgage ... on movable property importing a confession of judgment whether by authentic act or by private signature duly acknowledged." Executory process was wrongly obtained here because the act of mortgage by private signature was not "duly acknowledged." It purports to be an acknowledged act within La. R.S. 13:3720, but we hold that it is not because it was in fact executed in the presence of only one witness. (Defendants testified without contradiction that the person who signed as the second "witness" was simply called into the room, after they had signed, to add her signature to the document.)
R.S. 13:3720's language is anomalous in that it gives authentic force to acts "purporting to be [sic] attested by two or more witnesses...." One cannot reasonably accept that language as meaning, however, that the witnesses need not really be witnesses as long as the act "purports to be" signed by two witnesses. The statute only makes an act "purporting to be" thus witnessed, etc., "accepted, prima facie, and without further proof, as being true and genuine...." The statute thus excuses one from having to prove that the witnesses were indeed witnesses, but it does not prevent an opponent of the act to prove the contrary. And in our case, the contrary was proved.
To be "authentic evidence" because acknowledged within R.S. 13:3720, an instrument must in fact have been witnessed by the two or more "witnesses." Webster's *211 New International Dictionary (2d ed.) defines witness in this context as
"one who is called on to be present at some transaction so as to be able to testify to its having taken place, as one who witnesses a will, deed, or marriage; specif, a person who sees the execution of an instrument and subscribes it to confirm its authenticity by his testimony."
One is not a witness to a written act who did not see the signing of the act by the principal actors. See General Investment, Inc. v. Thomas, 311 So.2d 95 (La.App. 4 Cir.1975).
The act of chattel mortgage was therefore not "duly acknowledged," and thus was not "authentic evidence" as required by C.C.P. 2635. The use of non-authentic evidence to obtain a sale by executory process defeats the creditor's right to a deficiency judgment. League Central Credit Union v. Montgomery, 251 La. 971, 207 So.2d 762 (1968). We therefore affirm the refusal of deficiency judgment.

II.
Plaintiff alternatively argues that the trial court's award of damages was improper. Plaintiff contends that the best the debtors could get was a rejection of plaintiff's demand for a deficiency judgment; and that, if any damages are recoverable, a credit must be allowed for defendants' use of the van. Defendants, on the other hand, ask for an increase in damages.
Plaintiff's July 13, 1981 petition for executory process recited: "Petitioner shows payment due on May 20, 1981 has not been paid and all succeeding installments have not been timely and fully paid," reciting a "balance due, the sum of $9,041.03." Plaintiff's August 28, 1981 petition for deficiency judgment similarly alleged the "original principal amount" owed on the note was $9,041.03. Plaintiff's January 15, 1982 motion for summary judgment annexed its New Orleans collection manager's affidavit "That all payments were made on the said mortgage and note, until the payment due May 20, 1981, at which time there was a balance of $9,041.03." Thus, although one claiming payment may have the burden of proving it (as plaintiff strongly urges in its brief), the judicial admission by plaintiff of payment up to May 20 relieved defendants of proving payments earlier than that date. See Ford Motor Credit Co. v. Herron, 234 So.2d 517 (La.App. 3 Cir.1970). The consequence is that defendants' proof of two payments of May 29 and June 30 proves not merely that payments were made but that they are attributable to the May and June payments.
That proof therefore establishes that, on July 13, 1981, the recital quoted in the preceding paragraph from the petition for executory process was false. Moreover, because the corporate plaintiff is charged with knowledge of the payments it received and deposited before filing for executory process, the record establishes that plaintiff knew that that recital of its petition for executory process was false.
(We do not reach the question of whether deficiency judgment is defeated by a showing that non-essential allegations in the petition for executory process were known to be false.)
The seizure and sale that occurred here was thus not merely procedurally incorrect but unfounded, for although the May 20 payment was nine days late and the June payment was ten days late, plaintiff accepted them as it had accepted other late payments. Indeed its own witness testified that it would have stopped its enforcement activity had defendants brought their note current (as we have indicated the evidence shows they did). See Sternberg v. Mason, 339 So.2d 373 (La.App. 1st Cir. 1976), writ denied 341 So.2d 901 (La.1977). We also cannot ignore the probability that the trial judge discounted some of plaintiff's evidence regarding contacts with defendants, or deemed defendants justified in doing so, in view of the faulty communication between plaintiff's offices regarding defendants' account. We therefore reject plaintiff's argument that the maturity of the remaining payments had been accelerated *212 when the May 20 (or June 20) payment was not paid when due. This case thus differs from Ford Motor Co. v. Breaux, 406 So.2d 313, 316 (La.App. 3 Cir.1981), which reasoned that "damages [are] negligible due to the fact that proper seizure of the automobile could have been ... achieved by a writ of sequestration" under C.C.P. 3571, without executory process. Sequestration was not proven to be available here because the debt was not proven to be matured by proper acceleration.
The trial judge awarded $7,000 damages for "loss of vehicle," without setting forth his calculation of that amount. The basic measure is the value of the vehicle, subject to a credit for whatever is owed to the creditor who wrongly caused the loss of the vehicle. The value of the vehicle in our circumstances is the van's price when new, reduced by some reasonable credit for its use (not for its being no longer a "new" vehicle offered by a dealer). The credit for use need not be a standard depreciation, nor a charge for mileage (as if it were a vehicle rented on a per-mile cost), but only some reasonable reduction in the value for the wear and tear from the use that defendants had. Plaintiff is not entitled to profit from defendants' use of the vehicle; Gour v. Daray Motor Inc., 373 So.2d 571 (La.App. 3 Cir.1979). Thus the value of the vehicle for our purposes need not be its "market" value (especially if a defective vehicle), because defendants did not put their vehicle on the market and are not willing sellers but persons who have been wrongly deprived of a vehicle for which they paid a new-vehicle price that they should be able to recover entirely (except to the extent that they have already "recovered" it by their actual use of the vehicle).
The price new with license and fees was $10,698.68. Plaintiff claims that, after an interest-and-insurance rebate of $1,921.84 out of $5,157.44 charged, defendant owed a balance of $7,204.19. That balance included, however, (1) $531.88 payments in May and June not credited, (2) unproven late charges and expenses of $85, and (3) unrebated, unearned insurance and interest charges that a wrongly-foreclosing creditor is not entitled to collect. There is no proof that in one third of the life of of the contract, 63% of the insurance premiums and interest were earned. One thing is certain: a creditor is entitled to rebate less than all unearned interest (by the rule of 78s) when the creditor is right, but not when wrong. Similarly, the insurance premiums cannot be charged as if defendants had canceled and owe short-term cancelation rates; they must be pro-rated. Defendants do not owe, and plaintiff cannot collect, unearned interest or insurance premiums, which we will estimate at about $1,500 (of the $3,235.60 not rebated). Reducing plaintiff's balance by those three items makes it $5,087.31.
We agree with plaintiff that, in effect, defendants' van did not have the full value of a new one, not even to defendants, because of the wear and tear resulting from defendants' use of it. There is little evidence in the record concerning the amount and character of that use, however, except for evidence that the van was used to some extent in defendant husband's employment but that its use was unsatisfactory because of defects that caused the van to be unusable, for up to three months on one occasion, when it sat on the dealer's lot. We conclude that, despite the paucity of evidence, an allowance of $500 for that use is reasonable.
We therefore conclude that the value of the van to defendants, as paid for by them but reduced for use, was about $10,198.68. Defendants still owed $5,087.31 to plaintiff for the van, and therefore their loss amounted to about $5,111.37, rather than the $7,000 that the trial judge allowed.
Defendants did not prove any entitlement to any other element of damage. We therefore reduce the award to $5,111.37.

III.
We also affirm, and increase by $1,000 for this appeal, the award of attorney's fees. Fees are awarded not because *213 of the misuse of executory process, see General Motors Acceptance Corp. v. Meyers, 385 So.2d 245, (La.1980), but under La. R.S. 51:1409 because of the unfair trade practice, within R.S. 51:1405, not only of wrongful executory process, General Investment, Inc. v. Thomas, 400 So.2d 1081 (La.App. 4 Cir.1981), cert. denied 401 So.2d 353, 354, but especially of repeatedly suing for a balance that the creditor knows is more than the amount due.

IV.
We also reject plaintiff's argument that new trial should have been granted so that it could produce records to show that, even counting the two last payments, it still had not been paid all instalments due when its executory proceeding was filed. Plaintiff's institutional unconcern for the correctness of its accounts (or for communication between its various offices) does not make its own accounting records evidence that it "could not, with due diligence, have obtained before or during the trial," C.C.P. 1972(2). Nor did the trial judge abuse his discretion in deeming that unconcern not "good ground" within art. 1973.
Finally, we note but need not decide defendants' argument that it was an unfair trade practice for plaintiff to sue after being reimbursed in full by the automobile dealer in accordance with the contractual stipulation of the one contract that included sale, mortgage, note, assignment and repurchase agreement. Perhaps plaintiff had no right of action thereafter for the deficiency, but we need not decide whether that, too, defeated all right to a deficiency judgment or entitled defendants to attorney's fees under R.S. 51:1409.
Amended to reduce damages to $5,111.37 and to increase attorney's fee award to $3,500, with all costs.
AMENDED.

ON REHEARING
PER CURIAM.
Our original decree is reinstated.
SCHOTT, Judge, joined by BARRY, Judge, concurring:
In our original opinion we held that plaintiff was not entitled to a deficiency judgment because the execution of the mortgage which was foreclosed upon by executory process did not conform to the requirements of R.S. 13:3720. I repudiate this portion of the opinion because it was unnecessary to consider this issue in deciding the case.
The trial court dismissed plaintiff's suit for a deficiency judgment because its petition for executory process alleged that the note sued upon became delinquent when the May 20, 1981 installment and all succeeding installments were not paid. Yet the trial judge found as a fact that plaintiff accepted two payments prior to the filing of its petition on July 13 so that the note was not delinquent when plaintiff seized the vehicle by executory process. This factual determination that the note was current when the suit was filed should not be disturbed unless manifestly erroneous. My review discloses no such error.
For this reason alone plaintiff's seizure of the vehicle was wrongful and the trial court properly awarded damages to defendants in addition to dismissing plaintiff's suit for deficiency judgment.
I do not join in reinstating the original opinion but do join in reinstating the original decree.
REDMANN, Chief Judge, concurring in decree on rehearing.
Plaintiff cites Catalanotto v. Associates Discount, 207 So.2d 180 (La.App. 1 Cir. 1968), cert. denied 252 La. 105, 209 So.2d 38 (1968). That case does assert that an act "purporting to be" witnessed by two witnesses remains authenticated by La.R.S. 13:3720 despite proof that it was in fact witnessed by only one witness, as long as that one executed the acknowledgment.
Catalanotto nowhere explains, however, why R.S. 13:3720, whose words merely authorize accepting "prima facie" an act that appears ("purports") to be duly acknowledged, somehow denies to a litigant the right to rebut that appearance, that prima *214 facie showing. Catalanotto does not address our reasoning that (1) the statute only excuses a proponent of a purportedly authenticated act from having to prove anything about the act, such as that the witnesses were indeed witnesses; and that (2) the statute does not prevent an opponent of the act from proving any falsity or irregularity about the act, such as that the witnesses were not both witnesses because not both presentas proved in our case.
The New Orleans Bar Association and the New Orleans Notaries Association, amici curiae on rehearing, cite Finance Security Co. v. Williams, 42 So.2d 902, 903 (La.App. 1 Cir.1949), for its assertion that it is not necessary to the authenticity of an authentic act of mortgage that the witnesses be present in the room when the mortgagor signs the act. That assertion, however, conflicts with this court's Union Savings & Loan Assn. v. Grand Co., 239 So.2d 395, cert. denied 256 La. 916, 240 So.2d 375 (1970). Amici do not discuss this court's Union Savings.
The law seems clear: the prima facie authenticity of an apparently authentic or authenticated act yields to proof by parol evidence of its nonauthenticity, such as proof that its "witnesses" in fact were not present at its execution.