528 So.2d 606 (1988)
Louisa J. Williams MOORE and Bernard Moore, Appellants,
v.
LOUISIANA BANK & TRUST COMPANY, Appellee.
No. 19553-CA.
Court of Appeal of Louisiana, Second Circuit.
May 4, 1988.
Writ Denied September 30, 1988.
*608 Rellis P. Godfrey, Shreveport, for appellants.
Weems, Abney, Wright & Feldman by Larry Feldman, Jr., Martha Levardsen, Shreveport, for appellee.
Before MARVIN, FRED W. JONES, Jr. and NORRIS, JJ.
FRED W. JONES, Jr., Judge.
Plaintiffs sued for damages for wrongful seizure and sale of immovable property following a seizure and sheriff's sale based on executory process by the mortgage holder, Louisiana Bank and Trust Company ("LBT"), and for damages for late charges in excess of the statutory limits imposed by La.R.S. 9:3525 and La.R.S. 9:3552. The Moores did not assert any affirmative defense before the seizure and sale, nor did they suspensively appeal the order of seizure. The trial court rendered judgment in defendant's favor, finding no fault giving rise to damages under Louisiana law. Plaintiffs appealed. For the following reasons, we affirm.
In July 1983 the Moores executed a collateral mortgage note, a collateral mortgage, and a promissory note to LBT. The hand note was payable in monthly installments of $122.87, and the Moores agreed to pay a late charge if the note payment was ten days late.
The first payment was 5 days late. The Moores were late on all subsequent months except one. If more than ten days late, they paid a late charge of $5.00 per payment as they had agreed in the terms of the hand note. The Moores were at least a month in arrears up to the July 1984 note. In July 1984 they made no payment. The bank began collection efforts and turned this matter over to its attorneys in September 1984. In October and November 1984 the Moores made six installment payments and stopped paying the note.
The Moores made no further attempts at payment, and did not bring the note to a current status. A demand letter requesting $300.74 by February 15, 1985, "in order to avoid a lawsuit", was sent to the Moores. The actual amount due was $280.74.
Mrs. Moore did not contact the attorney but made a single payment to LBT for $150.00 (less than the $280.74 due). LBT referred the matter to its attorneys for acceleration and collection. The attorneys sent a demand letter to the Moores for the total amount of the note, to be paid no later than March 12, 1985.
Mrs. Moore made another payment for a portion of the note due, a sum of $150.00, to LBT. She did not attempt to contact her attorney, she did not speak with the attorneys who corresponded with her, nor did she speak to anyone at LBT about the deficiency or the acceleration. No attempt to pay the balance of the note was made.
On April 1, 1985 LBT filed a civil action for executory process against the Moores to have their property seized and sold at sheriff's sale in satisfaction of the note. When suit was filed, the March payment and the balance on the note were outstanding. After suit was filed, Mrs. Moore made two additional payments: $127.87 on April 9, 1985 (the March payment and late fee), and $103.61 on May 10, 1985. She did not attempt to pay the accelerated balance.
The trial judge ordered the seizure and sale after reviewing the petition and attached *609 documents in the action for executory process. The debtors did not seek injunctive relief. In fact, Mrs. Moore testified that she contacted an attorney for the first time after the sheriff's sale.
Mr. Moore testified that he was not aware of the suit until the sale had taken place. He was unable to testify concerning payments or attempts to satisfy the obligation, but did testify that this procedure had caused some marital difficulties and that he felt that his wife had suffered mental distress as a consequence of the bank's legal action. He was aware that the house had been temporarily rented, but did not know for how long or how much rent had been collected. Mr. Moore testified that his wife had taken care of all the details concerning the house.
After the house was seized and sold, the Moores contacted an attorney who filed this suit on their behalf on June 7, 1985. LBT filed exceptions of no cause of action and vagueness which were overruled. After a trial on the merits, the trial court ruled in favor of the defendant.
Executory process is an accelerated procedure whereby a mortgage creditor may provoke the sale of an encumbered property to satisfy his mortgage. Because of the summary nature of the remedy, the law has surrounded executory process with safeguards for protection of the debtor. If a petition for executory process is not supported by authentic evidence, the remedy is unavailable and the creditor's alternate remedy is by ordinary process. American Bank and Trust Company in Monroe v. Carson Homes, Inc., 316 So.2d 732 (La. 1975).
The essential basis of such a procedure is an authentic act importing a confession of judgment. Executory process is a unique and harsh remedy requiring strict construction. Myrtle Packing Company v. Mones, 226 La. 287, 76 So.2d 305 (La. 1954); Bank of St. Charles, Etc. v. Great So. Coach, 424 So.2d 462 (La.App. 5th Cir. 1982). La.C.C.P. Art. 2635.
The requirement of authentic evidence to support every link in the chain of evidence in an executory proceeding is termed the foundation of the use of executory process. "To justify the order of seizure and sale every muniment of title, and every link of evidence must be in authentic form." Miller, Lyon and Co. v. Cappel, 36 La.Ann. 264 (1884).
The court in Reed v. Meaux, 292 So.2d 557 (La.1973) indicated that any alleged defects in the sale, other than a failure to comply with La. C.C.P. Article 2635, are defects of form which are not substantive in character. Such defects were not grounds for maintaining an action to annul the sale. See 35 La.L.Rev. 458.
La. C.C.P. Article 2642 provides that defenses and procedural objections to an executory proceeding may be asserted either through an injunction proceeding to arrest the seizure and sale, or a suspensive appeal from the order directing the issuance of the writ of seizure and sale, or both.
In Universal C.I.T. Credit Corporation v. Spring, 242 So.2d 73 (La.App. 1st Cir. 1970), writ not considered, 258 La. 560, 246 So.2d 863 (La.1971), the court asserted that the debtor's failure to use the procedural mechanisms of La. C.C.P. Article 2642 would not prohibit him in a proper case from filing a separate action to question the validity of the executory proceedings.
The debtor in Universal C.I.T. answered the creditor's suit for deficiency judgment with a reconventional demand for damages. The reconventional demand was allowed over the creditor's exceptions, but was dismissed on the merits.
The plaintiffs here brought a separate action to allege that the actions of LBT in collecting their mortgage debt by executory process caused them injury for which they requested damages. Plaintiffs alleged these errors:
I. The trial court erred in failing to apply the law and jurisprudence to fundamental defects of defendant's petition for executory process.
II. The trial court erred in failing to apply the law and jurisprudence to defendant's wrongful seizure and sale of plaintiffs' property.

*610 III. The trial court erred in failing to apply the law and jurisprudence to forebearance in collection of plaintiffs' precomputed consumer loan promissory note.
IV. The trial court erred in finding as a matter of fact and law that defendant's letter of March 7, 1985 accelerated plaintiffs' precomputed consumer loan promissory note.
V. The trial court erred finding as a matter of fact and law defendant had not violated LSA-R.S. 9:3525 and LSA-R.S. 9:3552.
VI. The trial court erred in failing to award damages to plaintiffs for the wrongful seizure and sale of their home in violation of LSA-R.S. 9:3525 and LSA-R.S. 9:3552.
A succinct summary of the issues on appeal is:
1) Did LBT seize and sell property without substantive right, thereby damaging plaintiffs?
2) Were there excess delinquent charges made that would qualify plaintiffs for damages under La. R.S. 9:3525 and La. R.S. 9:3552?
I. The trial court erred in failing to apply the law and jurisprudence to the fundamental defects to defendant's petition for executory process.
Plaintiffs contend that there were fundamental defects in the executory process. The trial judge found that there were factual errors in the proceeding, but that these errors were not substantive but procedural. In oral reasons, the judge found that LBT had a right under the terms and conditions of the contract between the parties to seize and sell the property because the plaintiffs did not comply with the repayment of the money loaned as they had agreed to do.
The six "fundamental defects" alleged by plaintiffs include:
1. An incorrect amount was alleged as due and owing by plaintiffs in the petition for executory process;
2. An incorrect default date was alleged in the petition;
3. The promissory note was incorrectly identified as Exhibit "A";
4. The identification of the mortgage note was incorrect;
5. The petition was not verified pursuant to La. R.S. 6:334; and,
6. Defendant continued to accept payments on the debt after suit was filed.
LBT maintains that some of these "defects" are not errors at all and the other errors are "defects of form" rather than substantive defects that would disallow seizure and sale. See Reed v. Meaux, supra.
1. Was the incorrect amount alleged as owing in the petition a fundamental defect?
Plaintiffs maintain that since LBT accepted partial payment for the amount due after suit was filed, the whole executory process has resulted in a wrongful seizure. The balance due on the loan was listed in the petition as $3,215.58 rather than the amount due, $2,937.71.
The difference in the amounts represents the amounts paid by the debtor between March 6, 1985 and April 1, 1985. Full credit for these payments was given plaintiffs. However, the full amount required to pay off the note and eradicate the bank's right to a sale and seizure was not paid before suit was filed or before the seizure and sale was completed. Payment of the debt due is a defense to be asserted by the plaintiffs. La. C.C.P. Article 2642. Furthermore LBT promptly credited all payments. Plaintiffs do not allege that payments were not credited or that the money was not owed.
On the date the petition was filed, the full amount of the note that was due had not been paid. The bank's substantive right to use executory process was not defeated by the acceptance of partial payment.
2. Was an incorrect default date alleged in the petition?
The petition of LBT alleged that the January 26, 1985 installment payment that was due and owing had not been paid. In fact, Mrs. Moore paid the installment amount due on January 26, 1985 on March *611 15, 1985. Before the date this payment was made, Mrs. Moore had received a letter by certified mail which demanded that the full balance owed on the loan be paid to avoid the seizure and sale of the property that had been mortgaged.
The plaintiffs did not pay the full amount due. So, although the January installment was not due on the date suit was filed, the balance of the loan was past due.
Plaintiffs cite Chrysler Credit Corporation v. Walker, 488 So.2d 209 (La.App. 4th Cir.1986) in support of their position that the incorrect statement that the January 26, 1985 payment was due and owing was a fundamental defect in the executory process sufficient to allow an award of damages for wrongful seizure. However, a careful reading of Chrysler Credit, supra, notes that there the court found that the seizure and sale was not merely procedurally incorrect but unfounded. The debtor paid the two payments owing before suit was filed. The creditor's testimony at trial admitted that if the payments were made current, no repossession would have occurred. Furthermore the trial judge in Chrysler Credit did not find that the debt was properly matured by acceleration.
In the instant case, the bank's loan officer did not testify that the bank was willing to accept only enough payment to bring the note current. The letter received by the debtors clearly stated that the full balance was due and had to be paid to avoid a lawsuit for the purpose of seizing and selling the property in satisfaction of the balance owed on the note. A substantial balance was due on the day the petition was filed.
The bank's demand was for full payment of the note to avoid litigation for the purpose of sale and seizure. The note had not been paid when suit was filed.
3. Is the labeling of the promissory note as "Exhibit A" when the petition refers to "Exhibit A" as the mortgage note a fundamental defect?
The requirements for executory process are the presence of the proper documentation. Both the promissory note and the mortgage note were attached to the petition. The mislabeling of one as "Exhibit A" and the other as "Exhibit C" is clearly not a fundamental defect. The requirements for the authentic evidence are present. La. C.C.P. Article 2635, infra.
4. Was the lack of paraph on the hand note a fundamental defect?
The hand note was not paraphed for identification with the mortgage, but the mortgage note was correctly paraphed. The fact that the hand note was incorrectly labeled "Exhibit A" does not therefore require that this note must be paraphed. This is not a fundamental defect.
5. Must every petition filed by a bank in an executory process be verified pursuant to La. R.S. 6:334?
The requirements for authentic evidence under La. C.C.P. Article 2635 are:
1) The note, bond or other instrument evidencing the obligation secured by the mortgage or privilege.
2) The authentic act of mortgage or privilege on immovable property importing a confession of judgment.
3) The act of mortgage or privilege on movable property importing a confession of judgment whether by authentic act or by private signature duly acknowledged.
4) Any judgment, judicial letter, order of court, or authentic act necessary to complete the proof of plaintiff's right to use executory process.
La. C.C.P. 2636 provides:
The following documentary evidence shall be deemed to be authentic for purposes of executory process:
1) The note, bond, or other instrument evidencing the obligation secured by the mortgage or privilege, paraphed for identification with the act of mortgage or privilege by the notary or other officer before whom it is executed;
2) A certified copy or a duplicate original of an authentic act;
3) A certified copy of any judgment, judicial letters, or order of court;
4) A copy of a resolution of the board of directors, or other governing *612 board of a corporation, authorizing or ratifying the execution of a mortgage on its property, certified in accordance with the provisions of R.S. 13:4103;
5) A certified copy of the contract of partnership authorizing the execution of an act of mortgage filed for registry with the secretary of state; and
6) All other documentary evidence recognized by law as authentic.
La. R.S. 6:334 provides:
In the event of foreclosure by executory process of a mortgage on either movable or immovable property in favor of a supervised financial organization, the certificate of any officer thereof, under the seal of the supervised financial organization, certifying as to the amount due on the mortgage, the interest rate as applicable, and the maturity thereof by reason of the failure of the mortgagor, his assigns, or successors to comply with the obligations imposed on him by the act of the mortgage is authentic evidence of the facts recited in the certificate.
Comment (a) states that this statute does not change the law.
Reading these statutes together illustrates what is required for executory process and what is defined as authentic evidence. There is no requirement that a bank must file a certificate pursuant to La. R.S. 6:334. If the bank does comply with La. R.S. 6:334 that compliance is deemed authentic evidence by law as allowed in La. C.C.P. Art. 2636(6).
6. May the creditor accept payments after suit is filed?
Plaintiffs did not brief this allegedly fundamental defect, however defendant points out that it was the option of the debtors to continue to pay or not as they chose. The payments were properly credited to reduce the balance of the amount due. Acceptance of a payment which is so credited is not a fundamental defect.
The debtors have the burden of proving that the debt was paid. This debt was not paid in full, nor did the plaintiffs prove it was.
Having examined each allegedly "fundamental defect", we find several clerical errors were made in the petition. However, as the trial judge found, these errors were not fundamental errors that will now prohibit executory process or prove that the seizure and sale was wrongful.
II. The trial court erred in failing to apply the law and jurisprudence to defendant's wrongful seizure and sale of plaintiffs' property.
Plaintiffs challenge the finding of the trial court that the errors were procedural and cite two cases in support of their position that the property in this case was illegally seized and sold.
In Tapp v. Guaranty Finance Co., 158 So.2d 228 (La.App. 1st Cir.1983), writ denied, 245 La. 640, 160 So.2d 228 (La.1964), the court found that the note sued on was not in authentic forma basic requirement for executory process. La. C.C.P. Art. 2635. LBT's executory proceeding was in the proper authentic form. Tapp is not applicable to this case.
Additionally, plaintiffs argue that Chrysler Credit, supra, supports their position that this was a wrongful seizure. However, the creditor there accepted all payments owed before filing suit and failed to accelerate the loan.
LBT accepted payments before and after filing suit. However, LBT demanded payment in full by a letter dated March 7, 1985. Plaintiffs never paid the full balance due. Subsequently, suit was filed and plaintiffs were served; seizure and sale followed. The trial judge found that the seizure and sale was not a wrongful seizure. The record supports his ruling.
III. The trial court erred in failing to apply the law and jurisprudence to defendant's forebearance in collection of plaintiffs' precomputed consumer loan promissory note.

AND
IV. The trial court erred in finding as a matter of fact and law defendant's letter of March 7, 1985 accelerated plaintiffs' precomputed consumer loan promissory note.
Plaintiffs claim that the legal doctrine of forebearance applies in this case *613 because after the March 7, 1985 letter was received the defendant continued to send late notices and accept late payments. Therefore, plaintiffs hypothesize that the March 7, 1985 letter, the subsequent suit for executory process served on the debtors, and the court proceedings were justifiably ignored.
These debtors had a history of tardy paymentsonly one payment was timely. However, LBT continually attempted to collect this note timely. In September of 1984, a collection procedure was made by the LBT attorneys. Debtors paid six installments in two months to avoid suit. The last of these six payments was made November 29, 1984.
Debtors promptly ceased to pay any additional installments. LBT protested with both computer print-outs and a letter. Fargarson testified that when he again turned this account over to the attorneys for collection in March 1985, he stated he wanted the note collected in full. The March 7 letter demanded payment in full and warned that without full payment seizure and sale would result.
Debtors attempted partial payment. Shortly thereafter, suit was filed. Because plaintiffs continued to receive late notices for installment payments, plaintiffs claimed LBT's actions had not changed and plaintiffs had no reason to believe the March 7 letter and LBT's subsequent treatment would be different from the September experience.
Two differences are obvious. First, LBT followed up on the March 7 letter by filing suit. Plaintiffs received service of process. The March 7, 1985 letter and the subsequent suit do not leave any doubt that LBT intended to collect the fully matured balance. Secondly, in September plaintiffs contacted the creditor and took immediate action to make the note current. After the March letter, Mrs. Moore testified that she did not contact the bank or discuss the suit with the bank's attorneys or an attorney on her own behalf. The debtors did not attend the executory process hearing; they did not attempt to enjoin the proceedings in any manner; they did not assert any affirmative defenses nor did they timely appeal.
Mrs. Moore testified that she first contacted an attorney after the sale and seizure had been completed.
The law on forebearance is well settled. This court discussed forebearance in First National Bank v. Higgs, 406 So.2d 673 (La.App. 2d Cir.1981); and Burris v. Gay, 324 So.2d 11 (La.App. 2d Cir.1975), writ denied, 326 So.2d 377 (La.1976). Forebearance applies when an obligor has not insisted on his right to receive payments promptly when due and a course of conduct has developed where the creditor has accepted routine late payments without complaint or objection to the extent that the obligee begins to feel that late payments are of no moment.
In First National, supra, the court clearly states that, where a creditor protests late payments his acceptance will not necessarily rise to the level of forebearance.
Mere acquiescence was not found to create estoppel in Burris, supra, where the obligor periodically complained to the obligee about late payments.
In a period of 6-7 months, a letter was mailed by the bank, two collection letters were mailed by LBT attorneys and a suit for seizure and sale was filed. These actions illustrate ample protest to preclude forebearance.
V. The trial court erred in finding as a matter of fact and law defendant had not violated LSA-R.S. 9:3525 and LSA-R. S. 9:3552.
La.R.S. 9:3525 provides for maximum delinquency charges and La.R.S. 9:3552 provides for the possible penalties for a violation of La.R.S. 9:3525.
The trial judge, in written reasons for judgment noted that La.R.S. 9:3552 is penal in nature and must be strictly construed. Shoemaker v. Fidelity Finance, Inc. of Zachary, 464 So.2d 1005 (La.App. 1st Cir. 1985), writ denied, 467 So.2d 1130 (La. 1985). Finding that the plaintiffs failed to show that LBT intentionally violated the statute or that the violations were not *614 caused by good faith errors, the trial judge rejected the plaintiffs' demands. This finding is supported by the record which indicates that errors made were promptly corrected and credited by LBT.
VI. The trial court erred in failing to award damages to plaintiffs for the wrongful seizure and sale of their home in violation of LSA-R.S. 9:3525 and LSA-R.S. 9:3552.
Damages for wrongful seizure are allowed after an illegal seizure. Mid-States Home, Inc. v. Lartigue, 383 So.2d 99 (La.App. 3d Cir.1980); and Tapp v. Guaranty Finance Co., Inc., supra. This award can include damages in compensation for embarrassment, humiliation, mental anguish, and worry. Plaintiffs claim all of these damages but have failed to prove that the seizure herein was illegal.
Plaintiffs have proved that there were defects as to form in the petition for executory process. The law and jurisprudence are well settled that where there are procedural defects in a proceeding for executory process, before sale and seizure the debtors can retard the sale by injunction. Reed v. Meaux, supra; Mellon Financial Services Corp. # 7 v. Cassreino, 499 So.2d 1160 (La.App. 5th Cir.1986).
While this sale may have been retarded, it was likely without full payment of the balance due. Plaintiffs have not shown that payment was not due.
Plaintiffs here did not avail themselves of any of the procedural remedies available to defend against a suit for executory process. La.C.C.P. 2642.
Once sale to a third person is accomplished, the debtor-mortgagor cannot then annul the sale and recover the property because of defects which he might have alleged prior to the sale by injunction or appeal unless the purchaser purchases with notice of the defect or participates in fraud upon the mortgagor. Peyrefitte v. Harvey, 312 So.2d 159 (La.App. 1st Cir.1975), writ denied, 314 So.2d 736 (La.1975).
Plaintiffs cite Haas v. Buck, 182 La. 566, 162 So. 181 (1935) for their premise that, where a judgment debtor's property was prematurely seized, the debtor was entitled to maintain an action for damages notwithstanding the fact that the debtor had failed to enjoin seizure or appeal suspensively. In Haas, supra, the judgment debtor did make a timely motion for a new trial. The writ allowing seizure was issued prior to the expiration of the statutory delay provided by law to the judgment debtor for an application for a new trial. Premature seizure is not supported by the record in this case.
Furthermore, in Haas, supra, the court cites Regan v. Washburn, 39 La.Ann. 1071, 3 So. 178 (1887), for the legal rule that where the plaintiffs did not timely complain of an illegal seizure, their suit for damages was denied. Haas is also distinguishable procedurally: the plaintiff promptly filed a motion for a new trial, protested against the seizure directly to Buck, and brought the suit for damages before the judgment under which the seizure was made had become final.
The trial judge correctly ruled that the plaintiffs/appellants failed to sustain their burden of proving an illegal seizure or negligence by LBT that caused their damage. The plaintiffs did not carry the burden of proof for the delinquency charges limited by the statutes in Assignment # 5.
By their inaction, plaintiffs waived their procedural remedies under La.C.C.P. 2642. When considering their separate claim for damages under La.C.C. 2315, the ruling of the trial court is supported by the record: the discrepancy complained of is insufficient to constitute an illegal seizure. There was no negligence resulting in an illegal seizure by LBT.
Summary
The debtors did not pay promptly as they had agreed when making this contract in July 1983. LBT initiated collection proceedings on more than one occasion in less than two years.
The creditor repeatedly requested payments and followed up the March 7 demand letter by filing suit and proceeding within *615 the terms of the law through an executory process. The debtors chose to do nothing.
After the sale and seizure was completed the Moores contacted an attorney.
The seizure was not procedurally perfect. In such cases, the law provides a procedure to retard the speedier executory process and return the proceeding to an ordinary process.
If the sale has been perfected, the law generally does not allow annulment, but rather allows the debtor to use the procedural defects as a defense against a suit for a deficiency judgment.
The debtors have not proven that they were damaged by a premature seizure, but claim a wrongful seizure. This seizure was not illegal, but procedurally imperfect. The Moores did not avail themselves of the remedy for procedural imperfections by retardation of the suit or a defense in a subsequent suit.
By their inaction, plaintiffs have waived their procedural remedies. They have failed to prove that an illegal seizure, which would give rise to damages, was perpetrated by LBT.
For these reasons, the judgment of the trial court is AFFIRMED, at plaintiffs' cost.