568 So.2d 1097 (1990)
Jeanetta Burton JORDAN, et al.
v.
Cecil TAYLOR, et al.
Consolidated with
Lillie Russell MAGEE, et al.
v.
Cecil R. TAYLOR, et al.
Nos. 89-CA-1860, 89-CA-1861.
Court of Appeal of Louisiana, Fourth Circuit.
September 25, 1990.
Rehearings Denied November 14, 1990.
Writ Denied December 14, 1990.
Roberts, Katz, Baudier and Broussard, Michael E. Katz, Robert A. Preston, Jr., New Orleans, for plaintiffs-appellants.
Bruno & Bruno, Stephen P. Bruno, New Orleans, and Schafer & Schafer, Dianne J. Marshall, New Orleans, for defendants-appellees.
Before GARRISON, BARRY, KLEES, WARD and PLOTKIN, JJ.
KLEES, Judge.
This action consolidates lawsuits by two separate sets of plaintiffs claiming the wrongful death of Roosevelt Russell. One suit was filed by Russell's siblings, Lillie Russell Magee, Laura Russell Sims and T.C. Russell; whereas, the other suit was brought on behalf of three minors against the estate of Roosevelt Russell claiming to be Russell's illegitimate children, namely Kenyote Burton, Nicole Santiago and Sean Santiago. The cases were consolidated and the trial judge referred the issue of the children's filiation to a Commissioner, who, after hearing extensive testimony on the subject, recommended that the children's claims be dismissed. Plaintiffs filed an *1098 exception to the report of the Commissioner. After reviewing the matter, the trial court accepted the Commissioner's findings as to law and fact, and rendered judgment in favor of Russell's siblings, dismissing the action filed on behalf of the minor children. Plaintiffs now appeal that judgment.
The sole issue on appeal is whether the Commissioner's determination that plaintiffs failed to prove their filiation to Roosevelt Russell was manifestly erroneous. After reviewing the record, we find no manifest error in the decision, and therefore affirm the trial court's judgment.
Roosevelt Russell was born on February 27, 1943. He married Audrey Coates in 1961. From that union no children were born. During the time of that marriage, however, Nicole Santiago and Sean Santiago were born to Mildred Santiago, in 1967 and 1971, respectively. At the time of their births, Mildred Santiago was married to Alfred Santiago, but was living apart from him.
Russell was divorced from Audrey Coats on March 7, 1973. Kenyote Burton was born to Jeanetta Burton Jordan on November 11, 1978, at a time when she was legally married to R.J. Jordan but was living with Russell.
Russell died on January 2, 1986. Both of his parents predeceased him. He is survived by his two sisters and one brother, who are appellees in this action.
Because Roosevelt Russell did not formally acknowledge any of the three children, either by notarial act or by his name appearing as father on their birth certificates, the issue in this case is whether plaintiffs presented sufficient proof of their informal acknowledgment by Russell to be recognized as his children. See La. Civ.Code arts. 203, 209. Article 209 states that a child who has not been formally acknowledged can prove his filiation to a deceased parent only by clear and convincing evidence. An informal acknowledgment of filiation must be continuous, habitual, unequivocal, and leave little doubt that the alleged father considered himself to be the father of the child. Thomas v. Smith, 463 So.2d 971 (La.App.3d Cir.1985); State Through Dept. of Health & Human Resources in Interest of Brown v. Williams, 471 So.2d 1064 (La.App.3d Cir.1985).
In the instant case, the Commissioner found that plaintiffs had failed to meet their burden of proof because the testimony of the children's mothers, Jeanetta Burton Jordan and Mildred Santiago, lacked any credibility whatsoever, and absent their testimony, the evidence produced did not amount to clear and convincing proof that Russell believed himself to be the father of any of the three children. In reviewing this finding, we are mindful that where there is conflicting testimony, an appellate court may not disturb reasonable evaluations of credibility and reasonable inferences of fact absent manifest error, even though the court may feel that its own evaluations and inferences are just as reasonable. Canter v. Koehring Co., 283 So.2d 716, 724 (La.1973). Applying this standard, we do not find that the trier of fact committed manifest error in this case.
Jeanetta Jordan testified that Kenyote Burton is Roosevelt Russell's son; that she was living with Russell at the time of Kenyote's conception and birth and indeed, until Russell's death and that she did not have sexual relations with any other men during the time she lived with Russell. She also testified that Russell supported Kenyote financially. Jeanetta's testimony was severely undercut, however, by her admitted untruthfulness in several aspects of her lifestyle. For instance, Kenyote received Social Security benefits in excess of three hundred dollars per month on account of the disability of Jeanetta's legal husband, despite the fact that he was not listed on Kenyote's birth certificate and Jeanetta swore in court that he was not Kenyote's father. Moreover, Jeanetta collected welfare benefits for Kenyote by telling the authorities that the whereabouts of Kenyote's father were unknown, even though she was living with Russell at the time. In addition, Russell collected Section 8 housing supplements from the federal government because he and Jeanetta certified that Jeanetta was his tenant and that he was *1099 not related to her or Kenyote, although he and Jeanetta were actually co-owners of the house and were living there together. Jeanetta admitted at trial she knew she and Russell were violating the law. Finally, Jeanetta stated at trial that Russell gave her money every month, which she put in the general household fund that supported herself, Russell, Kenyote, and her two sons by another man who also lived with them. However, she testified that Russell bought extra things for Kenyote, such as clothes and shoes, beyond what was necessary. This statement contradicted her prior deposition testimony, and she admitted having lied at her deposition.
Mildred Santiago also testified that Russell was the father of Nicole and Sean, although she never lived with Russell. She stated that Russell gave her money for them every week, and later gave money directly to them. However, she could not specify a particular amount, and the amounts she claimed Russell gave to Nicole and Sean as teenagers varied greatly with their own testimony on the same subject. Nicole said Russell gave her $5 to $10 per week; Sean said Russell gave him $20 to $30 per week and his sister received the same amount; Mildred said Russell gave Nicole $50-$60 per week and Sean somewhat less, about $40 per week.
Mildred's testimony was also called into question by her lies about other matters. For instance, she stated in her deposition that she had no sexual relationships whatsoever during the two years that she left her husband Alfred Santiago and lived in Washington. At trial, however, she admitted having conceived and given birth to a son, Christopher Blades, whose father was Johnny Blades, while she was in Washington. Johnny Blades is listed as the father on Christopher's birth certificate although Mildred was still married to Alfred Santiago. Alfred Santiago is listed as the father on both Nicole and Sean's birth certificates. Also during her marriage to Alfred, Mildred had another child named Troy whose father, according to her testimony, is a man named Timothy Norris. Despite this fact, she applied for and received Social Security benefits for Troy after the death of Alfred Santiago by claiming that Alfred Santiago was Troy's father.
Considering the propensity for lying demonstrated by both Jeanetta Jordan and Mildred Santiago, particularly lying to gain financial benefit, we cannot say that the Commissioner's finding their testimony unworthy of belief is an unreasonable evaluation of credibility. Moreover, we find no manifest error in the trial court's conclusion that absent their testimony, plaintiffs' evidence does not amount to clear and convincing proof of filiation.
One of plaintiffs' primary witnesses was Reverend Littleton, who stated that Roosevelt Russell had been a member of his church for ten or twelve years before his death and that Jeanetta had joined the church before Russell died. Reverend Littleton stated that Russell asked him to pray for Kenyote when he was born prematurely. He also testified that he saw Russell in the hospital just after his accident and that Russell felt he was dying and asked the Reverend to assist Jeanetta and his son Kenyote. Reverend Littleton also claimed that he saw Russell giving money to Nicole and Sean Santiago periodically and knew they were Russell's children, although he did not know their names. Reverend Littleton's testimony was contradicted by several witnesses who stated that Russell never felt he was dying, but thought he would recover. It was also contradicted by Willie Bonds, a member of the Usher Board at Littleton's church, who testified that Jeanetta joined the church after Russell's death. Finally, the Reverend's testimony was undermined by the fact that he did not know that Russell had left the church for a period of time, although several other witnesses stated that he had done so.
Plaintiffs also produced Dr. Leslie Ray Bryant, who testified that standard blood tests did not exclude the possibility that Russell could have fathered each of the three children. Nicole and Sean Santiago testified that Russell told them he was their father and that he gave them money every week, but he never came to any school functions, spent holidays with them, *1100 or gave them birthday or Christmas gifts. Finally, plaintiffs produced approximately thirty friends and neighbors of Russell and Jeanetta Jordan. All of these witnesses testified that Russell referred to Kenyote as his son and that they often saw Russell with Kenyote a lot, especially on weekends. The great majority of them, however, did not seem to know Russell very well. Many assumed that he was married to Jeanetta and was also the father of her other two sons. Most of them knew nothing about Russell having any other children. In fact, five of these witnesses admitted that they had never actually spoken to Russell, but had merely seen him with Kenyote or heard him refer to Kenyote as "son". John McCorkle, Russell's cousin, said he knew Russell had three children, whom he pointed out in the courtroom, but he did not know the Santiago children's names. McCorkle also thought Russell had other children besides these three. Loney Landry, who claimed to be Russell's best friend, thought the Santiago children's names were "Russell" and "Demess".
In addition to these witnesses, plaintiffs relied upon certain documentary evidence, which they re-emphasize on appeal. With regard to Kenyote, the documentary evidence includes three joint bank accounts which Russell maintained for the child. One of the account forms had Russell's relationship to Kenyote listed as "father". A Hibernia executive testified that the normal procedure was for the account form to be filled out by a bank representative using information given to him by the applicant. Another Hibernia account had a blank where the relationship would have been listed. The forms were completed by two different Hibernia employees, neither of whom testified. There was no application form introduced from the third account, which was from American Bank.
The documents relied upon by Nicole and Sean Santiago include Russell's income tax returns from 1982, 1983 and 1984, which list them as dependents, and a $5,000 life insurance policy on Russell with Nicole designated as the beneficiary and listed as his daughter. The accountant who prepared Russell's taxes testified that in order to claim a person as one's dependent, one must live with that person and/or contribute at least one-half of their support. He also testified that Russell gave him the information as to his dependents.
It is undisputed that Russell was not living with Nicole and Sean at the time these returns were filed, but was living with Jeanetta and her three sons. There is also no proof that Russell ever contributed one-half the support of Nicole and Sean. Therefore, these tax returns are inherently unreliable. The insurance policy is also questionable because the application listed Russell's occupation as janitor, which conflicts with uncontradicted testimony by all witnesses that he was a truck driver. In addition, just as with the bank account forms, the agent who filled out the insurance application was not available to testify as to whether the information was obtained from Russell personally.
All the documentary evidence is somewhat suspect because of the fact that Russell could not read or write, and would have had to rely upon others to explain what he was signing. One final document, relied upon by all three children, is a narrative history taken by Dr. Olivo in the hospital the day after Russell's surgery. This history states that Russell had three children, ages 13, 10 and 6 years. Again, it is not clear whether Russell himself gave this information to the doctor, or whether someone else, such as Jeanetta, assisted him. The history indicates that Russell was in ICU with an oxygen mask and nasogastric tube. Jeanetta was present at the hospital that day. Lillie Magee, Russell's sister, testified that she gave the hospital the pertinent information on the day Russell was admitted, which would have been the day before, but she said hospital personnel did not ask her if Russell had any children. Dr. Olivo's medical history is also contradicted by the statement Russell gave to a social worker in April of 1985 that listed his relatives living in New Orleans as only his sister Lillie and his nieces.
Plaintiffs' evidence, both documentary and testimonial, was countered by the testimony of Russell's three siblings, his niece *1101 Ruby Singleton, and Willie Bonds, who served with Russell on the Usher Board at Reverend Littleton's church. Ruby Singleton and her mother, Laura Sims, who is Russell's sister, each testified that she had asked Russell directly if Kenyote was his child, and Russell had said no. T.C. Russell said that his brother had told him he didn't have any children; Ruby Singleton also testified that Roosevelt had told her the same thing. Roosevelt Russell visited his brother T.C. and his sister Laura in Mississippi four to five times a year, including most Christmases and other holidays, but he never brought any children with him. These relatives did not even meet the Santiago children until after Roosevelt Russell's death.
Lillie Magee, Russell's sister living in New Orleans, testified that Russell did not refer to Kenyote as his son, and she therefore assumed he was Jeanetta's son, although Russell never told her this. Lillie stated that Russell did tell her that he and Jeanetta did not get along, that they slept in separate rooms, and that Jeanetta had affairs and frequented bars. Several witnesses testified that Russell bought a house with Jeanetta because Jeanetta had received some money on account of her son's having been hurt in an accident. Willie Bonds, who said he had known Russell all his life and was on the Usher Board with him at church, testified that Russell passed once with Kenyote and when Willie asked who Kenyote was, Russell said he was Jeanetta's son.
When findings are based on determinations regarding the credibility of witnesses, the manifest error-clearly wrong standard demands great deference to the trier of fact's findings; for only the factfinder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding and belief in what is said. Rosell v. Esco, 549 So.2d 840 (La. 1989).
In view of the conflicting testimony among witnesses and the fact that the Commissioner's evaluations of credibility were reasonable, we find no manifest error in the trial court's conclusion that Nicole Santiago, Sean Santiago and Kenyote Burton did not prove their filiation to Roosevelt Russell by clear and convincing evidence. Accordingly, we affirm the judgment of the district court dismissing their suit.
AFFIRMED.
PLOTKIN, Judge, dissents with written reasons:
I respectfully dissent.
The sole issue on appeal is whether the Commissioner's determination that plaintiffs failed to prove their filiation to Roosevelt Russell was clearly erroneous. After extensive review of the record, I find manifest error in the decision of the trial court. I would, therefore, reverse.
An informal acknowledgement of filiation must be continuous, habitual, and unequivocal and of a frequency which allows little doubt that the alleged father considered himself to be the father of the child. State Through Dept. of Health & Human Resources in Interest of Brown v. Williams, 471 So.2d 1064 (La.App. 3 Cir. 1985); Thomas v. Smith, 463 So.2d 971 (La.App. 3 Cir.1985).
In the instant case, the Commissioner concluded that the offered proof of informal acknowledgement did not amount to clear and convincing evidence that Russell considered himself to be the father of the three children. In reviewing this finding, I am mindful that where there is conflicting testimony, an appellate court may not disturb reasonable evaluations of credibility and reasonable inferences of fact absent manifest error, even thought the court may think that its own evaluations and inferences are as reasonable. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978); Canter v. Koehring, 283 So.2d 716 (La.1973).
The Commissioner stated unequivocally that "[t]he testimony of Mrs. Santiago and Mrs. Jordan must be totally rejected as not being worthy of belief." Because I believe that this evaluation, based solely on admissions by Mrs. Santiago and Mrs. Jordan of fraud on prior occasions, amounted to an unreasonable disqualification, and because *1102 I believe that the documentary evidence submitted on behalf of the plaintiff children was sufficient to prove filiation by clear and convincing evidence, I would find that the trier of fact committed manifest error in this case.
Undisputed testimony offered at trial indicates that Roosevelt Russell and Jeanetta Burton were living together at the time of Kenyote's conception and birth, and that they purchased a house together and lived together until Russell's death in 1986.
Blood tests revealed that Kenyote's blood type is B positive and that Mrs. Burton's is O positive. Dr. Bryant testified as an expert in blood types that Kenyote's father had to have Type B blood, that statistically only one in five black males have type B blood, that Roosevelt Russell had type B blood, and that he could therefore have been Kenyote's father.
American Bank and Trust Company records reflect that on February 27, 1984, Russell opened an account in the name of "Roosevelt Russell for Kenyote Burton." Hibernia Bank records reflect that two accounts were opened in 1985 by Russell in Kenyote's name. The application form for one of these two accounts lists Russell's relationship to Kenyote as "father."
The testimony of Joel Peters, branch manager for the Social Security Administration, confirmed that Mrs. Burton was receiving Social Security child benefits for Kenyote after Russell's death. Mr. Peters explained that the Social Security Administration required proof of parentage before processing such a claim. Although he could not say what proof Mrs. Burton had offered, he did state with certainty that "[t]here was an investigation," and "these children [Kenyote, Nicole and Sean] were entitled to benefits" as the surviving children of Russell.
Twenty-four witnesses, neighbors, friends, co-workers, and relatives, testified that Kenyote was Roosevelt Russell's son. Most had heard Russell refer to the boy as "son." Many witnesses described for the court how much time Russell had spent with the boy. None had seen Russell spend time with Mrs. Burton's other two sons. The discrepancies in the testimony were insignificant and predictable when children of different fathers lived together as a family.
Mrs. Burton testified that Kenyote is the son of Roosevelt Russell, corroborating the testimony of the other witnesses. She also testified that Russell provided financial support on a monthly basis for Kenyote's care, and that Russell took Kenyote shopping for clothes. The Commissioner dismissed Mrs. Burton's testimony as incredible because she had lied in the past to obtain welfare and housing benefits. I do not believe that Mrs. Burton's prior actions when attempting to support herself and her three children, one of whom is handicapped, is relevant to evaluation of her present claim that Russell was Kenyote's father. I regard the documentary evidence that Russell was Kenyote's father as overwhelming. I find that the evidence of Russell's paternity is continuous, habitual, and unequivocal and that his actions indicating paternity were of a frequency which allows little doubt that he considered himself Kenyote's father. Therefore the trial court was clearly erroneous in concluding otherwise.
Both Nicole and Sean Santiago testified that Russell had treated them as his own children from their earliest memories. Additionally, the uncontradicted evidence indicates that both Nicole and Sean were given the middle name of "Russell" at birth. Obviously Mrs. Santiago was attempting to indicate the identity of their father by giving them his name. This is very clear evidence that Russell was regarded as the father of Nicole and Sean from the time of their birth. Both claim that they visited or were visited by Russell at least once a week, and that Russell gave them money on a weekly basis and amounts ranging from ten to two hundred dollars for special occasions.
Blood tests reveal that Russell could have been the father of both children. Dr. Bryant testified that Mr. Santiago, who was listed on Nicole's birth certificate as her father, could not in fact have been her father because of a different blood type.
*1103 Roosevelt Russell had two insurance policies. The first, a health and accident policy written on July 22, 1976, listed Jeanetta Burton as beneficiary. In March 1977 this policy was amended to make Nicole Santiago the sole beneficiary. The second policy, a whole life policy written on June 22, 1978, listed Nicole Santiago as the beneficiary and identified her as Russell's daughter. After Russell's death, Nicole Santiago received the proceeds of the whole life policy from the Union National Life Insurance Company.
Russell's tax returns for 1982, 1983 and 1984 list "Shawn and Nicole" as dependents, and state that he was living with the children, although he was not actually living with them. The accountant who prepared Russell's tax returns testified that in order to claim a person as one's dependent, one must live with that person and/or contribute at least one half of that person's support during the tax year. No additional proof of dependency was offered in connection with the tax returns, although the testimony of Mrs. Santiago, Nicole, and Sean, suggests that Russell did provide substantial financial support for the two children. The accountant also testified that Russell's tax liability was not affected by his declaration of dependents.
Mrs. Santiago was permitted to collect Social Security benefits for Nicole and Sean after Russell's death. Both Nicole and Sean visited Russell in the hospital following his injury. Both attended the wake and funeral. As in the case of Kenyote Burton, I find that the evidence of Russell's paternity of the Santiago children is continuous, habitual, and unequivocal, and that it was of such a frequency as to leave little doubt that he considered them to be his children.
The Commissioner incorrectly characterized a Social Security evaluation, taken while Russell was in the hospital, as evidence that Russell had no children. A more thorough narrative history of Russell, taken by Dr. Jaime Olivo the day after Russell's surgery, indicates that Russell had three children.
In view of the fact that the Commissioner's findings were unduly influenced by evidence that Mrs. Burton and Mrs. Santiago had lied in the past in different contexts, and in the light of considerable objective and documentary evidence that Russell had informally acknowledged all three children, I would find that Nicole and Sean Santiago and Kenyote Burton did prove their filiation to Roosevelt Russell by clear and convincing evidence. The uncontroverted direct physical evidence of the decedent's continuous acknowledgement of the three children, which occurred long before the question of paternity arose in the instant case, is overwhelming. Additionally, the evidence is clear that Russell could have been the father because he had the opportunity to be sexually involved with the children's mothers at the times of their conception. The combination of these facts clearly leads to the conclusion that Russell was the father of the children. Accordingly, I would reverse the judgment of the district court and enter judgment recognizing Kenyote Burton, Nicole Santiago and Sean Santiago as Russell's illegitimate children, and thus the proper parties to bring the wrongful death action. I would therefore also dismiss the claims of Russell's siblings, Lillie Russell Magee, Laura Russell Sims, and T.C. Russell.
For the above reasons, I respectfully dissent from the decision of the majority.
GARRISON, J., dissents for the reasons assigned by Judge PLOTKIN.

REHEARING DENIED
Plaintiff/appellants have filed this application seeking to suspend the effect of our judgment and have the case remanded to the trial court to consider their Motion for New Trial. We deny the application.
The delay for applying for a new trial is seven days, commencing to run the day after the judgment is signed. La.Code Civ. Pro. art. 1974. Once this period has elapsed, a new trial may be granted for newly discovered evidence when the evidence is such that it could not, with due diligence, have been discovered before or *1104 during the trial. Chrysler Credit Corporation v. Walker, 488 So.2d 209 (La.App. 4th Cir.1986).
In this instance, the evidence proffered consists of statements made by the husband and daughter of plaintiff/appellee Lillie Magee. There has been no showing that these witnesses were unavailable or that this evidence could not have been discovered earlier. In fact, as close relatives of Roosevelt Russell, these potential witnesses were certainly known to plaintiffs. Under the circumstances, plaintiff/appellants have no grounds for a new trial. See Commercial Credit Corporation v. Nolan, 385 So.2d 1246 (La.App. 3rd Cir.1980); Jessen v. Jessen, 386 So.2d 953 (La.App. 3rd Cir.1980); Ferrier v. Roy O. Martin Lumber Co., 223 So.2d 182 (La.App. 3rd Cir.1969), writ denied 254 La. 777, 226 So.2d 769 (La.1969).
Accordingly, the application for rehearing is denied.