570 So.2d 123 (1990)
C.J. EAVES Plaintiff-Appellee,
v.
NORWEL, INC. & John Deere Insurance Company Defendants-Appellants.
No. 89-579.
Court of Appeal of Louisiana, Third Circuit.
November 7, 1990.
Rehearing Denied December 14, 1990.
Writs Denied January 11, and February 8, 1991.
*124 K. Ray Rush, Oakdale, for plaintiff-appellee.
Provosty, Sadler & deLaunay, David Spence, David R. Sobel, Percy Smith Foote & Honeycutt, P.C., Gary Nunn, Alexandria, for defendants-appellants.
Before FORET, DOUCET and KNOLL, JJ.
KNOLL, Judge.
This appeal concerns issues of liability and quantum as a result of a fire to a John Deere 450-C crawler dozer which C.J. Eaves owned and financed through John Deere Industrial Equipment Company.
The dozer, which Eaves purchased new in 1986 from Norwel, Inc. (hereafter Norwel), had approximately 4,000 hours of use at the time of the fire in 1988. John Deere Insurance Company (hereafter John Deere), the property damage insurer, authorized Eaves to bring the dozer to Norwel for an estimation of damages. After John Deere determined that the dozer was repairable, Norwel replaced all the damaged parts. When Norwel presented the repair bill of $14,974.36, John Deere tendered $11,583.88 in payment and informed *125 Eaves that he had to pay the balance, since Norwel replaced the fire-damaged engine with a new one and installed new replacement parts to repair the dozer. When Eaves refused to pay the amount allocated to him, Norwel refused to release the dozer.
Eaves then filed suit against Norwel and John Deere. He sought damages from Norwel for wrongful seizure of the dozer, as well as payment of the insurance proceeds, and penalties and attorney's fees from John Deere for its arbitrary and capricious failure to pay the insurance claim.
Norwel denied the allegations of the lawsuit and filed a cross-claim against John Deere, seeking payment of the repair bill. Norwel also reconvened against Eaves, asking for payment of the repair bill; in addition, Norwel asserted a lien and privilege on the dozer and obtained a writ of sequestration seizing the dozer. Eaves denied Norwel's reconventional demand, and answered seeking damages for the wrongful issuance of the writ of sequestration. Later, Norwel supplemented its answer with a claim for payment under the theory of quantum meruit in the event that the trial court determined that neither Eaves nor John Deere contracted with it to perform the repairs.
John Deere denied the various claims against it. Nevertheless, John Deere deposited the sum of $11,583.88 into the registry of the court, and filed a concursus proceeding against Eaves and Norwel so that they could assert their claims to the funds.
The trial court ruled, as follows: (1) John Deere was liable to Norwel for the repair bill, less the $500 deductible which Eaves owed; (2) Norwel was entitled to the proceeds which John Deere deposited into the registry of the court; (3) John Deere was arbitrary and capricious in failing to pay the insurance claim, and was liable to Eaves for attorney's fees in the amount of $5,000; (4) Norwel and John Deere were solidarily liable to Eaves for damages in the amount of $16,000 for Eaves' loss of use of the dozer for eight months; and, (5) the writ of sequestration was dissolved, and Norwel was ordered to return possession of the dozer to Eaves.
Norwel appeals, contending that the trial court erred in finding: (1) that Eaves did not authorize the dozer repairs; (2) Norwel wrongfully sequestered the dozer; and, (3) that Eaves had no duty to mitigate his damages under LSA-C.C. Art. 2002.
John Deere also appeals, contending that the trial court erred in finding that: (1) John Deere incorrectly used depreciation and/or betterment in adjusting Eaves' insurance claim; (2) John Deere was arbitrary and capricious in its handling of the insurance claim; (3) John Deere and Norwel were solidarily liable for damages Eaves incurred when he was deprived the use of the dozer; (4) John Deere was liable for $5,000 attorney's fees; and, (5) Eaves had no duty to mitigate damages.

FACTS
At the conclusion of this bench trial, the learned trial judge orally set out the facts of this case which, as admitted by the appellants, accurately chronicle the events:
"Mr. Eaves had his tractor damaged by a fire [on March 28, 1988]. His insurance company was contacted. They sent an adjuster [Terry Veuleman] out. He couldn't tell on the spot whether it was repairable or a total loss. He asked Mr. Eaves to send it to a dealer of his choice so that an estimate could be made. This is testified to by both Terry [Veuleman]... and Mr. Eaves. Based on that agreement, Mr. Eaves took his tractor to Norwel for an estimate. Both parties, the adjuster and Mr. Eaves, say it was taken there for an estimate. Mr. Eaves testified that he went by one day and nothing had been done. They told him they were going to put it in the shop Monday and start taking it down. He went by several days later and they were doing that... [A]t that time, no estimate could be given on what it would cost to repair. Terry Veuleman, the insurance adjuster, was called over and apparently David Breezly [Norwel's shop foreman] gave Mr. Veuleman a ballpark estimate [of] twelve thousand to thirteen thousand dollars. *126 This estimate was not communicated to Mr. Eaves by either party by their own admission. Mr. Eaves' testimony is that he left that day with the impression that when an estimate was gotten, he would be told [what] it was. Mr. Breezly's testimony is that he discussed the repairs with the plaintiff and asked him if he wanted to salvage it [the dozer] or repair it and Mr. Eaves told him he wanted to keep his tractor [sic], he wanted it repaired. This was before any price or cost or anything was mentioned by anybody. Mr. Eaves according to Mr. Breezly and Mr. Veuleman, was explained how betterment worked out, but still no cost no estimateno indication of what it would cost him to have his tractor [sic] repaired was ever mentioned by anyone. Mr. Eaves did go by Norwel on several occasions for other reasons and at that time did notice his tractor was being repaired. No cost was ever given him... [U]ntil May the 5th when he was called in and told he'd have to pay fifty nine hundred dollars to get his tractor out and he had a five hundred deductible. This shocked Mr. Breezly. It certainly shocked plaintiff. He refused to pay it and he left. He was contacted later and told that the cost had been adjusted down to thirty six hundred at which time, according to Mr. Breezly, he was told that he'd already gotten a lawyer."

BETTERMENT/DEPRECIATION
John Deere contends that the trial court erred in finding that it improperly used depreciation and/or betterment in adjusting Eaves' loss. It argues that the insurance contract provides for this formulation of damages and that it proved that Eaves was in a better position after his dozer was repaired than he was prior to the fire.
In its treatment of this issue, the trial court stated:
"[John Deere] refused to pay the cost of repairs based on a theory of betterment. And as I've stated, I see no mention of betterment in that policy. I see no excuse for betterment in the policy, but even if there were, there's no proof of betterment. When the ... tractor was repaired it had basically the same value it had before it was damaged. It may have been in better shape. It may have been easier to sell. It may have been more attractive. It may have been a selling point, but as far as value, there is absolutely no evidence that it increased in value. So even if you could say that John Deere was in good faith in using betterment as an adjustment policy, which I see no ... authority for it in the policy. There's no evidence of betterment in this case."
We agree.
Assuming arguendo that John Deere's policy of insurance provided that it may adjust the loss for depreciation and/or betterment, the record is void of proof which would have enabled John Deere to invoke these policy provisions. Frank Close, an eight year employee of Norwel, was the only person to testify about the value of the dozer. Close testified that prior to the fire, the dozer had a value of $29,230; after the fire, he estimated that the value of the dozer was approximately $20,000. Even though it may not be denied that the dozer was in better condition after the repairs, a fact admitted by the trial court, there was no proof that the actual cash value of the the dozer, the insured property, was increased as a result of the repairs. Therefore, we find no error in the trial court's conclusion that John Deere did not prove that it could avail itself of the valuation adjustments utilized.

ATTORNEY'S FEES
John Deere contends that the trial court erred in finding it arbitrary and capricious, and in assessing it with attorney's fees of $5,000.[1] John Deere argues that it was not *127 arbitrary and capricious, because its decision to withhold payment of the full amount of the repair bill was based upon a reasonable interpretation of the policy of insurance.
LSA-R.S. 22:658 provides the statutory basis for adjudging a property insurer arbitrary and capricious in its failure to pay. It provides, in pertinent part:
"B. (1) Failure to make such payment within sixty days after receipt of such proofs and demand therefor, when such failure is found to be arbitrary, capricious, or without probable cause, shall subject the insurer to ... [the payment of] all reasonable attorney fees for the prosecution and collection of such loss, or in the event a partial payment or tender has been made, ... [the insurer shall pay] all reasonable attorney fees for the prosecution and collection of such amount."
LSA-R.S. 22:658 is penal in nature and must be strictly construed. The stipulated sanctions should be imposed only in those instances in which the facts negate probable cause for nonpayment. Morgan v. Offshore Hammers, Inc., 439 So.2d 491 (La.App. 1st Cir.1983).
In the case sub judice, the trial court found that John Deere failed to prove that it was entitled to decrease the amount of damages as may have been possible under the terms of the insurance contract and, thus, was arbitrary and capricious. It is axiomatic that even if an insurer relies upon provisions of its contract in its assessment of damages, it is incumbent upon the insurer to establish facts which allow it to call the policy provision into play. Moreover, although we find that John Deere's policy of insurance provides that the insurer may, at its option, replace the property with that of like kind, quality, and condition (Item 10, ADJUSTMENT OF LOSS), there was no evidence presented that John Deere advised Norwel to repair the dozer with used parts, or that it advised Eaves, its additional insured (John Deere Industrial Equipment Company was the named insured), that he would be liable for the difference between the cost of the depreciated damaged parts and the new replacement parts. On this basis, we find no error in the trial court's determination that John Deere was liable to Eaves for attorney's fees.
In a corollary issue, John Deere contends that the trial court's award of $5,000 attorney's fees was excessive. John Deere's additional argument that Norwel should have been cast with solidary liability for the attorney's fee will be addressed later in this opinion.
In Baghramain v. MFA Mutual Insurance Company, 315 So.2d 849 (La.App. 3rd Cir.1975), writ denied, 320 So.2d 207, 209 (La.1975), we articulated the criteria for assessing reasonable attorney's fees:
"Relevant are the importance and results of the litigation, the difficulties thereof, the degree of professional skill and ability required and exercised, the skill and experience of the attorney, the importance of the litigation to the parties involved, as well as the amount or values involved or recovered. The fee is determined by many considerations other than the time visibly employed in the litigation."
The trial court's conclusions with regard to assessment of attorney's fees under LSA-R.S. 22:658 is in part a factual determination and will not be disturbed in the absence of finding that it is manifestly erroneous. Cameron State Bank v. American Emp. Ins. Co., 401 So.2d 1090 (La.App. 3rd Cir.1981), writ denied, 409 So.2d 674 (La. 1981).
After carefully reviewing the record of this litigation, we cannot say that the trial court's award of $5,000 attorney's fees was manifestly erroneous.

SEQUESTRATION
Norwel contends that the trial court was manifestly erroneous in its conclusion *128 that the writ of sequestration was wrongfully issued. Norwel argues that it was entitled to the writ because it was a repairman under the provisions of LSA-R.S. 9:4501. In addition, it asserts that the trial court erroneously concluded that Norwel was not entitled to a writ of sequestration because there was no contract between Eaves and Norwel to repair the dozer.
For reasons which follow, we affirm the trial court's finding that the writ of sequestration was wrongfully issued, but pretermit Norwel's argument, finding that the issuance of the writ of sequestration was procedurally flawed.
LSA-R.S. 9:4501 provides that a repairman has a privilege upon the machinery for the cost of repairs made, including the parts and labor. The privilege may be enforced by the writ of sequestration, without the repairman having to furnish security therefor.
LSA-C.C.P. Art. 3501 provides, in pertinent part:
"A writ of attachment or of sequestration shall issue only when the nature of the claim and the amount thereof, if any, and the grounds relied upon for the issuance of the writ clearly appear from specific facts shown by the petition verified by, or by the separate affidavit of the petitioner, his counsel or agent." (Emphasis added.)
The harsh remedy of sequestration is extended only where the petitioner strictly and literally complies with the formalities of law. Hancock Bank v. Alexander, 256 La. 643, 237 So.2d 669 (1970). LSA-C.C.P. Art. 3501 is explicit in its provision that the petition in support of the writ of sequestration must either be verified or supported by a separate affidavit attesting to the facts alleged in the petition.
In the case sub judice, the record is void of either a verification of Norwel's petition for sequestration, or a separate affidavit as required by LSA-C.C.P. Art. 3501. Accordingly, we find that the formalities of law were not strictly complied with in the issuance of Norwel's writ of sequestration. Therefore, we find no error in the trial court's determination that Eaves was entitled to damages because Norwel's writ of sequestration was wrongfully issued.

SOLIDARY LIABILITY
Norwel and John Deere each raise arguments concerning the trial court's adjudication that they were liable for the $16,000 damages it awarded Eaves for the wrongful seizure of the dozer. John Deere contends that there was no legal authority on which the trial court could have found it solidarily liable with Norwel. Additionally, both John Deere and Norwel argue that if they are liable for damages for the wrongful seizure, Eaves failed to mitigate his damages. John Deere also contends that Norwel should have been cast with solidary liability for the attorney's fees.
We first turn our attention to the issue of John Deere's complaint regarding its solidary liability for the damages awarded in connection with the issuance of the writ of sequestration.
The trial court found that John Deere was so closely related to Norwel that solidary liability should exist for the payment of damages for Norwel's wrongful sequestration of the dozer. In its oral reasons for judgment, the trial court stated that it premised its determination of solidary liability on the fact that Norwel sold the John Deere property insurance policy, calculated the premium, and arranged for its payment as part of the financing with John Deere Industrial Equipment Company.
From the outset, we observe that pursuant to LSA-C.C.P. Art. 3506 the trial court could have awarded damages against the party who was responsible for the wrongful issuance of the writ of sequestration. With regard to this article, the record is clear that Norwel issued the writ of sequestration without any participation of John Deere. Therefore, we find that the trial court could not have bound John Deere solidarily through the use of LSA-C. C.P. Art. 3506.
We likewise find no basis upon which the trial court could have concluded, as was intimated in the oral reasons for judgment, that Norwel and John Deere were bound *129 solidarily as the result of any agency relationship.
In London Livery, Ltd. v. Americana Travel, 544 So.2d 1287 (La.App. 4th Cir. 1989), our brethren of the Fourth Circuit stated:
"`A contract is formed by the consent of the parties established through offer and acceptance.' LSA-C.C. art. 1922. Implied authority is actual authority, which, while unexpressed, can be inferred from the circumstances, purposes and nature of the agency. The essential test in determining whether an implied agency exists is the right of one person, the principal, to control the conduct of another, the agent, or the actual exercise of such control. The agency issue is, generally, a factual determination." (Citation omitted.)
After carefully reviewing the record, we cannot find that the legal relationship between Norwel and John Deere was developed factually to any extent which would permit us to conclude that an agency relationship existed between them. Accordingly, we find that the trial court's imposition of solidary liability cannot be premised upon a finding of agency.
For these reasons, we find that the trial court erred when it made John Deere solidarily liable with Norwel for the payment of the damages for the wrongful issuance of the writ of sequestration. As pointed out earlier herein, the trial court could have imposed penalties on John Deere under insurance law, but did not. Therefore, we find that we must amend the judgment of the trial court as far as it found John Deere solidarily liable with Norwel.
In a related question of solidary liability, John Deere also questions the trial court's failure to make Norwel liable with it for the payment of attorney's fees.
It is clear that the trial court imposed attorney's fees against John Deere under a finding that it was arbitrary and capricious as provided in LSA-R.S. 22:658. We likewise note that the trial court could have imposed attorney's fees against Norwel under the provisions of LSA-C.C.P. Art. 3506.
After carefully reading the trial court's oral reasons for judgment, we find that the trial court was silent about the imposition of attorney's fees against Norwel. The jurisprudence is consistent that when a trial court is silent on an issue, we interpret that as a rejection of the trial court of that issue. Unlike the mandatory award of attorney's fees pursuant to the insurance statutes relating to arbitrary and capricious failure to pay, see Lucito, supra, the award of attorney's fees under LSA-C. C.P. Art. 3506 is discretionary. Art. 3506 states with particular clarity that "[a]ttorney's fees for the services rendered in connection with the dissolution of the writ [of sequestration] may be included as an element of damages ...." (Emphasis added.) Therefore, we find no error in the trial court's determination that John Deere alone was responsible for the payment of attorney's fees.

MITIGATION OF DAMAGES
Norwel contends that the trial court erred in not decreasing damages because of Eaves' failure to mitigate his damages.
LSA-C.C Art. 2002 provides that an obligee must make reasonable efforts to mitigate the damage caused by the obligor's failure to perform. When an obligee fails to make these efforts, the obligor may demand that the damages be accordingly reduced. An injured party must act with care and diligence as a person of ordinary prudence would under the circumstances; the efforts to minimize damages are determined by the rules of common sense, good faith, and fair dealing. Unverzagt v. Young Builders, Inc., 252 La. 1091, 215 So.2d 823 (1968).
In particular, Norwel argues that the trial court should have decreased Eaves' damages because he did not pay Norwel that portion of the repair bill not tendered by John Deere when, by his own testimony, he was able. We disagree. The trial court's oral reasons for judgment clearly show that this argument was seriously considered and rejected in light of the testimony that Norwel repaired the dozer without making prior arrangements with Eaves, *130 and his reliance upon John Deere's representation that there was insurance coverage. Moreover, the trial court relied heavily upon the testimony that Eaves restructured his finances so that his son could take over mortgage payments in order to avoid Eaves' defaulting on his loan payments.
We cannot say that the trial court abused its discretion in failing to find that the $16,000 damage award should be reduced since Eaves did not mitigate his damages.
For the foregoing reasons, the judgment of the trial court is amended and recast as follows: IT IS ORDERED, ADJUDGED, AND DECREED that there be judgment in favor of the plaintiff, C.J. EAVES, and against the defendant, NORWEL, INC., for the sum of SIXTEEN THOUSAND AND NO/100 DOLLARS ($16,000), with legal interest from February 22, 1989, until paid. In all other respects, the judgment of the trial court is affirmed. Costs of this appeal are assessed equally to John Deere Insurance Company and Norwel, Inc.
AMENDED IN PART, AND AFFIRMED AS AMENDED.
NOTES
[1] Although the trial court found John Deere solidarily liable with Norwel for Eaves' damages for loss of use, a finding we will later address, it did not assess John Deere with 10% penalties as it could have under LSA-R.S. 22:658. Eaves neither answered the appeal nor independently appealed; therefore, we may not consider the trial court's failure to assess penalties. Compare Lucito v. Louisiana Hospital Service, Inc., 392 So.2d 700 (La.App. 3rd Cir.1980), where we reversed when the trial court awarded attorney's fees without finding the insurer acted arbitrarily and capriciously.