644 So.2d 1138 (1994)
SECOR BANK, Federal Savings Bank
v.
Sussie HACKLE, a/k/a Suisse Hackle, wife of/and John C. Derenbecker.
No. 94-CA-0158.
Court of Appeal of Louisiana, Fourth Circuit.
October 27, 1994.
*1139 Harry E. Kuhner, II, New Orleans, for plaintiff-appellant.
John C. Derenbecker, New Orleans, for defendant-appellees.
Before SCHOTT, C.J., and BYRNES and WALTZER, JJ.
BYRNES, Judge.
On November 29, 1990, Secor Bank, Federal Savings Bank ("Secor") filed proceedings via executiva against Sussie Hackle, a/k/a Suisse Hackle, wife of/and John C. Derenbecker ("Derenbeckers") and obtained an order of executory process based upon allegations of default on a mortgage for nonpayment of monthly payments due on June 1, 1990, and thereafter.
The Derenbeckers' request for a preliminary injunction was denied on March 21, 1991, but the trial court granted them an order staying the foreclosure sale on the same day.
On June 17, 1992, Secor filed a motion to dissolve the stay order which was granted on July 17, 1992. The day before, on July 16, 1992, the Derenbeckers filed a "Motion To Set Aside And Vacate Order In Executory Process As Null For Fraud Or III Practices" attacking the original order of executory process granted to Secor on November 29, 1990 and requesting that Secor be required to proceed via ordinaria so that a full review of the handling of the Derenbeckers' loan account could be made.
The trial court granted the Derenbeckers' motion by judgment rendered June 21, 1993 which set aside and vacated the order for executory process of November 29, 1990.[1] We affirm.
At the outset we note that the foreclosure sale has never taken place and the Derenbeckers still have title to the property.
Although there were a number of discrepancies in the Derenbeckers' mortgage loan account with Secor,[2] the crux of their case is their allegation that Secor unilaterally, without notice and without authority in law or by contract, applied $3,031.43 of their monthly payments to attorneys' fees incurred by Secor in connection with a delinquency that had occurred prior to the delinquency that is the subject of the instant suit. The Derenbeckers claim that they were entitled to have that amount credited against the delinquency claimed by Secor in these proceedings. We agree. This is significant because this $3,031.43 is more than sufficient to offset the *1140 entire amount alleged to be due in Secor's "Affidavit Of Plaintiff As To Delinquency" dated December 31, 1990. None of the late charges would then be applicable. For that reason alone the amount of delinquency alleged by Secor to be due in its petition for executory process is incorrect.

I. LSA-R.S. 9:3506.2 IS NOT APPLICABLE
In its written reasons for judgment the trial court stated that Secor's attempt to include the collection expenses as part of Derenbecker's escrow was contrary to LSA-R.S. 9:3506.2. Although we agree with the result reached by the trial court, we do not agree with the reasoning of the trial court. LSA-R.S. 9:3506.2A(8) provided that:
A. For the purposes of this Section, the following definition shall apply: [Emphasis added]
* * * * * *
(8) "Escrow account" means escrow, agency, or similar account for the payment of taxes or insurance premiums with respect to a home loan.
LSA-R.S. 9:3506.2A stated that the definitions contained therein are for the purposes of that chapter of the statutes. That chapter of the statutes consisting of LSA-R.S. 9:3501-3509.3 is entitled "Interest" and is limited to that topic. LSA-R.S. 3506.2A(8) in no way governed the authority of lenders to escrow for other purposes unrelated to the calculation of interest.
LSA-R.S. 3506.2 was not enacted until 1989. It was repealed effective July 1, 1993. However, it does not matter when it was effective as it is not relevant to the disposition of this case.

II. SECOR FAILED TO NOTIFY THE DERENBECKERS
In his letter to the bank dated April 16, 1988, Secor's attorney, Mr. Harry E. Kuhner, II gave a legal opinion to the Bank regarding the payment of his attorney's fees:
In our opinion, the Bank did not violate any of the contractual provisions by paying the attorney's fees and costs incurred in the collection matter, nor did it violate any of the provisions of the mortgage by placing the same into the escrow account, which is a non-interest bearing portion of the account.
There is no evidence that Secor ever obtained the Derenbeckers' consent to the escrowing of the attorney's fees; Secor does not argue that it did; and Mr. Kuhner's letter clearly implies that the bank acted without the Derenbeckers' consent based on its view that such consent was not necessary.
It is clear from the record that the Derenbeckers were not informed of Secor's billing of their account for attorney's fees. Secor's attorney states that he billed Secor for those fees. There was no attempt to prove that the Derenbeckers were sent a copy of that bill.
Secor's attorney did send Mr. Derenbecker a letter dated January 13, 1987 informing him that the account was "... current through the month of December, 1986 ..." This Court finds it impossible to reconcile this statement with the account analysis annexed to Secor's letter to Derenbecker of June 13, 1989. In that account analysis Secor shows a shortage for 1986 of $208.26 followed immediately by the statement: "F. Bank considered fully current through 12/31/87." On the next page of the analysis may be found the following entry:
C. ESCROW EVALUATION:
1. Delinquency as of 12/31/86 ($1,065.43)
Mary Barrios, the Secor Bank Representative, testified that the amount reflected on the March 1990 escrow analysis was incorrect even according to the bank's analysis of the account.
Even if this Court were to ignore the obvious discrepancies evident in the Derenbeckers' account, there is no document in the record informing the Derenbeckers of Secor's unilateral action in billing him $3,031.50 for attorney's fees. The appearance of that figure on a Mortgage Loan Statement dated 12/31/87 many months after the fact and buried among dozens of other such figures without any explanatory label is not proof of any good faith effort by Secor to inform Derenbecker of its actions; nor coming as it *1141 did many months after the fact does it constitute any kind of proof that Secor had acted with the Derenbeckers' consent. If Secor attempted to notify the Derenbeckers of its actions, there should be documentary proof thereof. Mary Barrios, Secor's "Representative", said that such information might be given to the customer verbally once the account had gone delinquent. Regardless of the applicable standard of review, we would have to conclude, as the trial judge apparently did, that Secor acted without the Derenbeckers' knowledge and consent. This constituted ill practice.
According to Secor's own employee and only witness, if any notice at all was given to the Derenbeckers, it was verbal and long after the fact. Such verbal notice, if given at all, would not have been volunteered by the bank, but would only have been given in response to an inquiry from a delinquent customer who happened to question why he was being dunned by the bank. Even if this were Secor's standard practice pursued without any deliberate attempt to deceive or take undue advantage, it still constituted "ill practice" that this Court cannot condone.

III. SECOR ACTED WITHOUT AUTHORITY
The escrow provision of the mortgage refers to "... taxes, paving installments, special assessments, or insurance premiums...."
The collection expenses which Secor attempted to recover are not taxes, paving installments, or insurance premiums. Therefore, they are either "special assessments" or they are not covered by the escrow clause in the mortgage. This Court finds that the term "special assessment" does not include collection expenses. The term "special assessment" was intended to cover charges "assessed" against the property such as grass cutting liens and paving liens.
Secor cites numerous provisions in the mortgage relating to the extent of its security interest. The issue is not whether Secor's security interest covers collection expenses. The issue is whether Secor has the right to unilaterally and without notice collect those expenses through the escrow process. We find that Secor had no such right.
Nor is the issue whether the law might have afforded Secor more drastic remedies to enable it to collect attorney's fees. The existence of more drastic remedies at law does not confer upon Secor the right to use less drastic non-consensual, self-help collection methods no matter how civilized those methods might appear to be.
Secor cites LSA-R.S. 6:825, 6:826, and 6:830 to support its right to unilaterally escrow for attorney's fees. LSA-R.S. 6:825 (repealed in 1993) provided that the bank could "... advance money for the payment of taxes, insurance premiums, special assessments on, repairs, additions, and improvements to and remodeling and maintenance of the property ..."
Such advances are limited to the preservation of the value of the collateral from physical damage, e.g., repairs and insurance, or from liens, e.g., special assessments and taxes. Common to all of these items is the fact that they inure to the benefit of the debtor. They do not extend to debt collection efforts which benefit only the lender. LSA-R.S. 6:825 provided no support for Secor's position.
LSA-R.S. 6:826 allows a lender to require escrow payments for "... the estimated annual taxes, assessments, insurance premiums, ground rents, and other charges upon the real estate securing a loan, or any of such charges ..." The categories enumerated by this statute all relate to the preservation of the collateral or charges bearing against the property itself. All of the expenses enumerated are as of as much interest and benefit to the borrower as they are to the lender. The statute provides no authority for self-help collection efforts which are contrary to Louisiana's long standing tradition of civilian methodology, especially where real property is at issue. This Court is not blind to the increasing intrusion of common law concepts of security devices into Louisiana law, but in the absence of a clear and specific legislative mandate, this Court will not expand a real property mortgage creditor's self-help collection authority.
*1142 LSA-R.S. 6:830 deals not with escrow but with the security interest that a financial institution is required to obtain in connection with real property loans. We note, however, that none of the items listed in LSA-R.S. 6:830 can be construed to include collection expenses. LSA-R.S. 6:830 is not persuasive, even by analogy.
This Court is of the opinion that, in the absence of express contractual language specifically referring to attorney's fees and collection expenses, the mortgagee cannot unilaterally apply monthly payments to the satisfaction of such claims without the prior knowledge and consent of the mortgagor. There remains the issue of whether even such express provisions would be violative of public policy. This Court expresses no opinion on that issue at this time as the mortgage before us today contains no such express language.

IV. DERENBECKERS' RIGHT TO NULLIFY THE ORDER OF EXECUTORY PROCESS DID NOT PRESCRIBE OR PEREMPT
Secor argues that the Derenbeckers' action in nullity has been lost through peremption under LSA-C.C.P. art. 2004 which limits such actions to one year. The original order for executory process was signed on November 29, 1990, and the judgment denying the preliminary injunction was signed on March 21, 1991. Secor contends that it had the right to apply portions of the Derenbeckers' payments to the payment of attorney's fees, but that if it did not have that right such "ill practices" took place between January 12, 1987, and June 30, 1989. The Derenbeckers did not file this action for nullity until July 16, 1992. Secor argues that this is past the one year period set forth in LSA-C.C.P. art. 2004, and that the Derenbeckers are too late in raising this issue.
The law of Louisiana is contrary to Secor's position. In Reed v. Meaux, 292 So.2d 557 (La.1974) the Supreme Court stated commencing at 572:
The action to set aside a sale by executory process is not governed by Article 2001 through 2006 of the Code of Civil Procedure prescribing the grounds for nullity of a final judgment. An order of sale is not a judgment in the strict sense, Harrod v. Voorhies' Administratrix, 16 La. 254 (1840), and an action to annul it is not governed by the procedure or prescription applicable to action of nullity of judgments....
In Reed v. Meaux, the sale of the property had actually taken place, but the court held the door open to the defendant-debtor because the creditor-plaintiff was the adjudicatee of the property at the sheriff's sale and remained in possession of the property. In the instant case the foreclosure sale has never actually taken place. At the earliest, time does cannot begin to run on the Derenbeckers' action in nullity until the sale under executory process actually takes place. LSA-R.S. 9:5622 (formerly LSA-C.C. art. 3543).
These grounds for annulment asserted by the Derenbeckers are "substantive" and "fundamental to executory process." Therefore, it was not error for the trial court to nullify the order for executory process. We adopt the analysis of Reed v. Meaux, supra, found in France v. American Bank, 505 So.2d 1175, 1177 (La App. 5 Cir.1987):
The Supreme Court in Reed did not clearly define those elements which are fundamental to executory process so as to constitute grounds for an annulment of a sale. However, the Reed court did provide a few examples of certain fundamental factors. It noted that:
[t]he requirements of authentic evidence under Article 2635 of the Code of Civil Procedure are limited to evidence of: 1) the mortgage or privilege on the property sought to be seized and sold; 2) the amount of the indebtedness sought to be enforced; and 3) the creditor's right to enforce the mortgage and privilege under executory process. [emphasis added]
In the instant case the improper handling of the escrowing of attorney's fees by Secor is an "ill practice" that goes directly to the issue of the amount owed and is, therefore, "fundamental." Additionally, even Secor's evidence shows inconsistencies in the accounting on the Derenbeckers' account.
Executory process has many technical requirements that must be scrupulously *1143 observed, and it is one of the few areas of the law where there is a rational basis for giving form precedence over substance:
The rationale of these decisions is based in part upon the exceptional character of the remedy afforded the creditor by executory process, permitting him to seize and sell property without previous citation and judgment.

Reed v. Meaux, supra, 292 So.2d at 572.
We note that in Reed v. Meaux and in France v. American Bank the debtor had not sought an injunction or an appeal prior to filing the action in nullity. In this case the plaintiff tried unsuccessfully to obtain an injunction prior to bringing this action in nullity. We recognize that in allowing the Derenbeckers to bring this action in nullity after their injunction request was denied may encourage future litigants to attempt to take two bites at the apple. However, this Court is of the opinion that if the Supreme Court would sustain the debtor's action in nullity in Reed v. Meaux even after the foreclosure sale had taken place, that this Court would be expected to do as much in this case where the defect is blatant, substantial and fundamental and the foreclosure sale has not yet occurred.
Therefore, we find that the trial court was correct in deciding that the executory proceedings were null.

V. ATTORNEY'S FEES
The trial court did not address the Derenbeckers' request for attorney's fees in its judgment and in its written reasons. The trial court is therefore presumed to have rejected that request. Eaves v. Norwel, Inc., 570 So.2d 123 (La.App. 3 Cir.1990). The Derenbeckers answered Secor's appeal, requesting attorney's fees of $4,800. Secor's actions in this case constitute an ill practice. However, the Derenbeckers did not brief the issue of attorney's fees, and have cited no authority which would mandate the trial court to award attorney's fees. In the absence of such authority we find no basis for overturning the judgment of the lower court.
For the foregoing reasons the judgment of the lower court is affirmed.
AFFIRMED.
SCHOTT, Chief Judge, concurring.
I subscribe to the majority opinion and add these comments:
On January 13, 1987, appellant's attorney addressed a letter to appellee in which he confirmed that the previous dispute between these parties had been fully settled with payment of $8,648.06 by appellee and that the account was current through December, 1986. The letter states that the attorney's fee for representing appellant was being billed to appellant.
The letter does not remotely suggest that this fee will be billed later on to appellee; and it does suggest that payment of appellant's fee generated during the settlement and/or bankruptcy proceedings was one of the issues eventually settled by payment of $8,648.06 by appellee.
I get the impression that the billing of the attorney's fee on March 17, 1987, to appellee, which was two months after this matter was closed between appellant's attorney and appellee, was an afterthought on appellant's part, as was the application of appellee's mortgage payments to the fee.
NOTES
[1] Apparently through a typographical error the judgment gives the date of the order as "November 29, 1992", but it is clear from the record and from the written reasons for judgment that the court intended to refer to the order dated November 29, 1990.
[2] See Bank of Louisiana v. Yolo Corp., 430 So.2d 756, 759 (La.App. 5 Cir. 1983).