688 So.2d 709 (1997)
Mary Lee Wade, Wife of/and James RAO
v.
TOWERS PARTNERS, L.L.C., David Caballero and Lawrence Roe Dodd.
No. 96-CA-1529.
Court of Appeal of Louisiana, Fourth Circuit.
February 12, 1997.
Order Concurring in Denial of Rehearing March 14, 1997.
*710 Michael D. Clement, Marrero, and Steven M. Spiegel, Metairie, for Defendants-Appellants Tower Partners, L.L.C. and David Caballero.
Jack A. Ricci, Gary J. Giepert, Ricci & Giepert, New Orleans, for Plaintiffs-Appellees, Mary Lee Wade, wife of/and James Rao.
David K. Persons, Hailey, McNamara, Hall, Larman & Papale, L.L.P., Metairie, for Third Party Defendant-Appellee, Lawrence Roe Dodd.
Before SCHOTT, C.J., and CIACCIO and WALTZER, JJ.
WALTZER, Judge.

STATEMENT OF THE CASE
Mary Lee Wade and her husband, Lt. James Rao, United States Navy (Ret.) (the Raos) sued Tower Partners, L.L.C. (Tower), David Caballero, its agent, and Lawrence Roe Dodd, Tower's attorney, for damages arising out of the alleged wrongful seizure of residential rental property located in New Orleans. Tower and Caballero answered and filed a third party demand against Dodd seeking damages for alleged legal malpractice. Dodd filed a Reconventional Demand against Tower and Caballero alleging reliance on Caballero's information and specific instructions concerning prosecution of Tower's claim against the Raos. Tower and Caballero appeal from a judgment of the trial court awarding the Raos general damages in the amount of $10,000 and special damages in the amount of $10,000 and dismissing the third party demand against Dodd.[1] We reverse.

STATEMENT OF FACTS
Lt. Rao, a New Orleans native, served from 1974 to January 1994 in the Navy, during which time he obtained an undergraduate degree in Occupational Education and a master's degree in Aerospace Operations. In January 1988 the Raos purchased a six-unit complex located at 703 and 705-07 Majestic Place in Algiers from Orleans Bank and Trust (OBT). In connection with the purchase, the Raos executed a demand note *711 to OBT in the amount of $60,000 with fixed interest at the rate of 10%, payable monthly. The note was secured by an Act of Collateral Mortgage and the pledge of a demand hand note in the amount of $100,000. When the Raos purchased the property it was in poor condition and had gone through a foreclosure. The Raos made extensive repairs at a cost of over $20,000. Lt. Rao described tenant occupancy as steady, and testified that most of the units were rented. An appraisal by Margaret K. Young dated 15 April 1992 valued the property at $65,000.00.
Lt. Rao testified that he made monthly payments of $640 to OBT until the bank failed and was taken over by the Federal Deposit Insurance Corporation (FDIC). He made regular payments of $640 to the FDIC on 5 September 1992, 7 October 1992, and 7 November 1992. On 5 September 1992 he wrote to a representative of the FDIC and asked to discount the mortgage to $40,000 to $45,000 in order to refinance the property at a lower market rate. The FDIC advised him that their appraisal showed the property to be worth approximately $80,000, and they would not be willing to take more than a one or two percent reduction from the balance then due on the note. Eventually, because his active duty status with the Navy required him to live outside the New Orleans area, Lt. Rao found it economically difficult to hold the property, and tried to sell it. Lt. Rao incurred $4,819.84 in renovation expenses in January and February, 1993 in an attempt to sell the property. The only offer he received required owner financing, which he was not in a position to accept. He again contacted the FDIC and was advised on 6 December 1992 that the FDIC had sold his note and that he should pay $100 to the FDIC for December 1992. He did so. In early January 1993 Caballero called Lt. Rao, advised him that he was representing the investors (Tower) who had bought the note and demanded full payment of the balance. Caballero refused Lt. Rao's offer to pay down the mortgage and continue paying on the note. Lt. Rao testified that he obtained Tower's address from the FDIC by letter dated 5 February 1993. According to an enclosure to the FDIC letter, the Raos's obligation was current through October 1992. Lt. Rao testified that by Express Mail he sent Tower, through Caballero, a check for $1920, representing payments for December 1992 and January and February 1993, but the payment was refused. Caballero admitted that he refused to accept Lt. Rao's tendered payment. On 2 February 1993 Tower sent Lt. Rao a certified letter demanding payment of the entire indebtedness within ten days. According to the demand letter:
The reason for this acceleration of your indebtness [sic] is the creditor's lack of security in the collateral. [Emphasis added.]
On 23 March 1993, Dodd filed a Petition for Executory Process on behalf of Tower in Civil District Court for the Parish of Orleans, # 93-4771, naming the Raos as defendants. According to the petition:
1. The Raos are indebted to Tower in the sum of $51,185.32 with interest at an annual rate of 12% from 11 January 1988 until paid plus 25% attorneys' fees;
2. The payments due on the note for the month of 9 October 1992 and payments due thereafter have not been made despite amicable demand (Paragraph 9).
The attestation clause on the verification of the petition is blank and lacks the signature of a notary public.
On Tower's motion, the trial court on 30 March 1993 appointed Tower keeper of the properties and authorized Tower to take possession of the premises and to manage, operate and conserve the value thereof and to collect the rents, issues and profits in accordance with law. The tenants were directed to pay rent only to Tower. At that time all units were rented at a total monthly rental of $1,700.
By letter of 7 April 1993, counsel for the Raos advised Dodd of the error in the executory process petition relative to the alleged default in payment and asked that the writ be recalled and the rents released, failing which an injunction suit would be filed. On 16 September 1993 the Raos filed the petition in the instant case for damages and injunctive relief against Tower, Caballero and Dodd. In a Motion to Continue the hearing on the injunction request, Tower and *712 Caballero alleged that because Dodd was named as a defendant, they had retained Sidney Cotlar as counsel.
On 8 December 1993, Cotlar wrote to Caballero advising that he would prepare an Answer to the Raos's Petition as well as a Supplemental and Amended Petition to convert the Tower suit to Ordinary Process. In reply, Caballero sent a FAX transmittal to Cotlar, acknowledging receipt of his letter, and demanding: "Please, DO NOT CONVERT SUIT TO ORDINARY PROCESS." [Emphasis in original.]
On 11 February 1994, Eric Oliver Person enrolled as counsel for Tower and Caballero. On 18 November 1994 the trial court granted Tower's motion to dissolve the temporary restraining order preventing foreclosure sale of the property. On 6 July 1995 Person's firm withdrew as counsel for Tower and Caballero, and on 2 October 1995 Michael D. Clement enrolled as counsel.
Caballero admitted at trial that the allegation contained in the Petition for Executory Process that the note was in default from 9 October 1992 was untrue. It is clear from the face of the note that the 12% interest rate recited in the Petition for Executory Process is incorrect.
The property was appraised for $40,000 in connection with the sheriff's sale held on 9 March 1995, and was adjudicated to Tower Partners for $28,000.
FIRST ASSIGNMENT OF ERROR: The trial court erred in determining that the procedure required by law for an executory proceeding had not been followed and that a wrongful seizure occurred.
Executory process has many technical requirements that must be observed scrupulously, and it is one of the few areas of law wherein there is a rational basis for giving form precedence over substance. Secor Bank v. Hackle, 94-0158 (La.App. 4 Cir. 10/27/94), 644 So.2d 1138, 1142-43. Seizure pursuant to executory process is wrongful if the procedure required by law for an executory proceeding has not been followed. La. C.C.P. art. 2751.
Tower made demand for payment of the demand note and had the right to execute on that basis. The Raos have not shown that payment was not due under the demand note, and did not avail themselves of any of the procedural remedies available to them to defend against the executory process suit. See, La. C.C.P. art. 2642 and Moore v. Louisiana Bank & Trust Company, 528 So.2d 606, 614 (La.App. 2nd Cir.1988), writ denied, 531 So.2d 269 (La.1988).
The end result would have been the same to the Raos: the property would have been seized (as, in fact, it was), managed by Tower (as it was) and eventually sold (as it was). The seizure that took place was made on a petition that failed to state the correct grounds, but was a legitimate exercise of Tower's right to proceed under executory process based on the note's demand feature. The technical deficiency of the petition did not cause anything to happen that would not have happened had the proper grounds been stated. Thus, the Raos can show at most a technical infirmity of the petition, but no damages attributable to that deficiency. Although it is true that a party aggrieved by a wrongful seizure is entitled to general and special damages, he must nevertheless prove that he did sustain damages. See, International American Company, Inc. v. Louisiana State Employees' Retirement System, 412 So.2d 140 (La.App. 4th Cir.1982). Rao did not and cannot sustain that burden of proof. Therefore, we reverse the trial court's judgment awarding damages for wrongful seizure.
In light of our reversal, the remaining assignments of error are moot.
REVERSED.
SCHOTT, Chief Judge, concurring in the denial of plaintiffs' application for rehearing:
In their application for rehearing plaintiffs complain that the original opinion failed to address the trial court's finding that they sustained damage by defendants' failure to maintain the property. In support of this argument they point to an appraisal of $65,000 made two years before the sheriff's sale and the appraisal of $40,000 made for the *713 sheriff's sale. This overlooks plaintiffs' own testimony that following the demand by defendants for the $51,000 balance on the note they were trying desperately to sell the property in order to avoid foreclosure. This indicates that the market value of the property even before the seizure was well below $65,000.
Furthermore, the property was bid in by defendant for $28,000, only two-thirds of its appraised value of $40,000. Even if the property had been in mint condition idle speculation alone would support a conclusion that the property would have brought more at the auction. In any case the property would not have brought enough to pay the balance on the mortgage.
In their application plaintiffs also make much of what they call defendant's "false allegation" in their petition. It should be noted defendant attached the note to its petition and made it part thereof. Once this was done the recitation of the date of plaintiffs' last payment was superfluous, irrelevant and unnecessary. This was clearly a suit on a demand note and all the necessary allegations for such a suit were included in the petition.
In the note sued on the plaintiffs waived notice of demand. Nevertheless, defendant made demand for the balance and gave plaintiffs ample opportunity to comply. The record shows that plaintiffs knew full well that they had to pay the balance but were trying to sell the property and settle with defendant in order to avoid foreclosure. At one point the parties apparently were close to a settlement, but plaintiffs were unable to meet the required amount. This was unfortunate for them. The fact remains that when defendant filed its executory proceeding it had every right to do so on the basis that it made a demand for the balance, but plaintiffs failed to pay.
This is not a case of reversal because of manifest error in the trial judge's findings. It is a case where the trial judge committed legal error in concluding that this was a wrongful seizure entitling plaintiff to any damages. Cases such as Youn v. Maritime Overseas Corp., 623 So.2d 1257 (La.1993), and Rosell v. ESCO, 549 So.2d 840 (La.1989), have to do with the appellate court's review of facts. They have nothing to do with this case whatsoever.
NOTES
[1] The Raos argue in brief that they are entitled to damages and attorneys' fees under the Louisiana Unfair Trade Practices Act, La. R.S. 51:1401 et seq. Since the Raos neither appealed nor answered the defendants' appeal, we cannot modify the judgment below in favor of the Raos. La. C.C.P. art. 2133; Matthews v. Consolidated Companies, 95-1925 (La.12/8/95), 664 So.2d 1191.