MAX N. TOBIAS, JR., Judge.
The defendants, Mary Lee Wade Rao and James Rao (collectively, “Raos”), appeal a deficiency judgment against them resulting from a foreclosure by executory process on a mortgage that was held by the plaintiff, Tower Partners, L.L.C. (“Tower”), as mortgagee. Tower answered the appeal asserting that the trial court improperly calculated the interest owed it. For the following reasons, we amend the judgment and, as amended, affirm.
The Raos purchased from Orleans Bank and Trust Company (“Orleans Bank”) a piece of rental property consisting of six units located on Majestic Place, New Orleans, Louisiana (hereinafter, “the property”). The Raos executed a promissory hand note payable on demand to the order of Orleans Bank for the original principal amount of $60,600.00. To secure the payment of the promissory hand note, the Raos pledged to Orleans Bank a collateral mortgage note secured by a collateral mortgage on the property.[1]
| ^Orleans Bank went into receivership, and the promissory note was negotiated to the receiver, the Federal Deposit Insurance Corporation (“FDIC”). Tower subsequently purchased the promissory note from the FDIC.
The Raos made regular monthly payments on the promissory note, first to Orleans Bank and then to the FDIC. After the promissory note was sold to Tower, Tower demanded full payment of the unpaid principal balance due on the promis *128 sory note and all unpaid interest. The Raos attempted to continue making monthly payments, but Tower refused to accept them. On 23 March 1993, Tower filed suit to foreclose on the property by executory process (hereinafter, “foreclosure suit”). Subsequently, Tower sought to be and was appointed keeper of the property; it took possession of the property for the purpose of managing it.
On 16 September 1993, the Raos filed a separate suit against Tower, its attorney, and one of its principals, seeking to enjoin the sale of the property (hereinafter, “injunction/damage suit”), alleging that the property had been wrongfully seized because the foreclosure suit contained a statement that was inaccurate regarding the date through which payments had been made on the promissory note. The Raos also alleged that they had suffered damages for Tower’s failure to maintain the property while keeper, causing the value of the property to decline. In the trial of the damage claim, the court awarded damages to the Raos, but this court reversed the trial court judgment in Rao v. Towers Partners, L.L.C., 96-1529 (La.App. 4 Cir. 2/12/97), 688 So.2d 709, holding that the Raos |sdid not suffer any damages as a result of the inaccurate statement in the original petition in the foreclosure suit.
During the pendency of the injunction/damage suit, Tower amended its petition in the foreclosure suit to correct the error regarding the payments that had been made. On 29 March 1995, the property was sold with the benefit of appraisal in a judicial sale under executory process. The appraised value of the property was $40,000.00; Tower bought the property at foreclosure for $28,000.00.
After the property was sold at foreclosure but while the injunction/damage suit was still pending in the trial court on the issue of damages, on 2 January 1998 Tower filed a new suit for a deficiency judgment against the Raos (hereinafter, “deficiency suit”) pursuant to La. C.C.P. art. 2272 and La. R.S. 13:4106 alleging that the Raos still owed a balance after the distribution of the proceeds from the judicial sale of the property in the foreclosure. (The unpaid amount due on the promissory hand note at the time of the judicial sale was $51,185.32.[2] The property was sold for $28,000.00 with appraisal.) In the deficiency suit, Tower alleged the Raos owe it a deficiency of $23,185.32 plus the contractual interest as provided in the promissory note, costs of collection, and attorney’s fees.
The Raos filed an exception of res judi-cata to the deficiency suit, arguing that Tower should have, but did not, raise its claim for a deficiency in the then-pending injunction/damage suit, which had not yet been tried when the cause of action for a deficiency arose. The trial court denied the exception of res judicata, and the deficiency suit proceeded to trial. A judgment was rendered against the |4Raos in the amount of $44,683.39 plus judicial interest from the date of judicial demand, until paid, and court costs.
In their appeal, the Raos assert that the trial court erred in failing to sustain the exception of res judicata because Tower did not bring its claim for a deficiency in the injunction/damage suit as a mandatory reconventional demand pursuant to La. *129 C.C.P. art. 1061. Additionally, they claim that Tower is not entitled to a deficiency judgment because it allowed the value of the property to decline while it was acting as keeper.
La. C.C.P. art. 1061 provides:
A. The defendant in the principal action may assert in a reconventional demand any causes of action which he may have against the plaintiff in the principal action, even if these two parties are domiciled in the same parish and regardless of connexity between the principal and reconventional demands.
B. The defendant in the principal action, except in an action for divorce under Civil Code Article 103 or 103, shall assert in a reconventional demand all causes of action that he may have against the plaintiff that arise out of the transaction or occurrence that is the subject matter of the principal action.
La. R.S. 13:4231 provides in relevant pertinent part:
Except as otherwise provided by law, a valid and final judgment is conclusive between the same parties, except on appeal or other direct review, to the following extent:
[[Image here]]
(2) If the judgment is in favor of the defendant all causes of action existing at the time of final judgment arising out of the transaction or occurrence that is the subject matter of the litigation are extinguished and the judgment bars a subsequent action on those causes of action.
In Terrebonne Fuel & Lube, Inc. v. Placed Refining Co., 95-0654, 95-0671 (La.1/16/96), 666 So.2d 624, the Louisiana Supreme Court discussed the scope of res judicata as follows:
Res judicata is an issue preclusion device found both in federal law and in state law. Prior to the amendments to Louisiana res judicata law effective in 1991, Louisiana law on res judicata was substantially narrower than federal law. The purpose of both federal and state law on res judicata is essentially the same; [sic] to promote judicial efficiency and final resolution of disputes by preventing needless relitigation.
95-0654, p. 11-12; 666 So.2d at 631.
In Terrebonne, the Supreme Court also stated: “the original Louisiana doctrine of res judicata was based on a presumption of correctness rather than an extinguishment of the cause of action. A decided case precluded a second suit only if it involved the same parties, the same cause and the same object of demand as the prior suit.” 95-0654, p. 12; 666 So.2d at 632 (citation omitted). The Supreme Court further stated that under La. R.S. 13:4231, as amended effective 1 January 1991, the following would be the case:
[A] second action would be barred because it arises out of the occurrence which was the subject matter of the prior litigation. The central inquiry is not whether the second action is based on the same cause or cause of action (a concept which is difficult to define) but whether the second action asserts a cause of action which arises out of the transaction or occurrence which was the subject matter of the first action.
Id., quoting Comments — 1990, La. R.S. 13:4231.
The official comment to article 1061, which was also amended effective 1 January 1991, states in pertinent part:
|fi(a) Judicial efficiency is served by requiring the defendant though compulsory reconventional demand to assert all causes of action he may have against the plaintiff that arise out of the transaction or occurrence that is the basis for the plaintiffs action.
*130 (b) Furthermore, if the defendant has a cause of action arising out of the subject matter of the plaintiffs action, then the defense of res judicata will prevent relitigation of issues common to both causes of action except as otherwise provided by law. The requirement of a compulsory reconventional demand therefore also serves the interest of fairness by giving the defendant notice that he must assert his related cause of action.
In Burguieres v. Pollingue, 2002-1385 (La.2/25/03), 843 So.2d 1049, the Supreme Court set forth five criteria that must be met for a matter to be considered res judicata. They are:
(1) the judgment is valid; (2) the judgment is final; (3) the parties are the same; (4) the cause or causes of action asserted in the second suit existed at the time of final judgment in the first litigation; and (5) the cause or causes of action asserted in the second suit arose out of the transaction or occurrence that was the subject matter of the first litigation.
2002-1385, p. 8; 843 So.2d at 1053.
The judgments in the foreclosure suit and injunction/damage suit are valid and final insofar as the issues of foreclosure, injunction, and damages are concerned. The parties in the foreclosure suit and the deficiency suit are essentially the same, although the injunction/damage suit names additional parties defendant; those additional parties are identified directly as mandatary (attorney) and principal officer (agent) for Tower. Arguably, the cause of action for a deficiency arose out of the foreclosure suit. However, the cause of action for a deficiency did not arise or exist until it was known that a deficiency actually existed, i.e., on 29 March 1995 when the sheriff issued his return on the writ of | .¡.seizure and sale which demonstrated that the sale proceeds of the property were insufficient to satisfy Tower’s claim. See, Security Homestead Ass’n v. Fuselier, 591 So.2d 335, 341 (La.1991). That is, if at the sheriffs sale the property had realized an amount greater than or equal to the debt of the Raos to Tower, no cause of action for a deficiency would exist.
La. C.C.P. art. 2772 states:
A creditor may obtain a deficiency judgment against the debtor either by converting the executory proceeding into an ordinary proceeding as provided in Article 2664, or by a separate suit. In either case, the defendant must be cited and all of the delays and formalities required in ordinary proceedings must be observed.
La. C.C.P. art. 1066 states:
An action which either matured or was acquired by the defendant in the principal action after answer may be presented, with the permission of the court, as a reconventional demand by supplemental pleading.
Article 2772, specific to a deficiency judgment cause of action, expressly permits the creditor (Tower), at the creditor’s election, to either file its claim for a deficiency in the executory proceedings as an ordinary proceeding for the deficiency or as a new, separate suit.
Tower’s answer to the injunction/damage suit was filed on 11 February 1994, at which point issue joined. The trial of the damage claim of the Raos occurred in November 1995. In view of article 1066, relative to reconventional demands, Tower could have filed its claim for a deficiency as a reconvention with the court’s permission. But they were not required to do so by virtue of either article 1066 or article 2772, or both. Moreover, when applied to the case at bar, our view is that the second suit referred to in Burguieres, supra, is *131 the deficiency | Ssuit and the first litigation is the foreclosure suit because article 2772 authorizes a creditor to file a new suit once the cause of action for a deficiency exists.[3] The fourth test of Burguieres is thus not met and res judicata does not apply.
We therefore conclude that the trial court did not err in denying the exception.
Additionally, the record before us does not demonstrate that Tower allowed the mortgaged property to decline in value while it was the keeper such as to preclude a deficiency judgment.
In its answer to the Raos appeal, Tower assigns as error the trial court’s failure to apply the contractual interest rate specified in the promissory note to the deficiency of $23,185.32.[4] In its judgment, the trial court cast the Raos in judgment for $44,683.39, being the total of the deficiency amount, costs, and attorney’s fees, together with judicial interest on that amount from 2 January 1998, until paid, and court costs. According to Tower, the correct interest should be 36% on the first $1,400.00, 27% on the next $2,600.00, 24% on the next $3,000.00, and 21% on the balance.
The interest rate specified in the collateral mortgage and the collateral mortgage note was 12% per annum. The promissory hand note that Tower held specified interest at 10% per annum. The promissory hand note also states that:
In the event that payment or payments under this note are not made when due or upon any other event or default hereunder or under any agreement securing this note, Bank shall have the right to prospectively increase the rate of interest under this note to thirty-six (36%) per cent per year for that portion of the unpaid principal amount |flof the loan not exceeding one thousand four hundred dollars, twenty-seven (27%) per cent per year for that portion of the unpaid amount of the loan exceeding one thousand four hundred dollars and not exceeding four thousand dollars; twenty-four (24%) per cent per year for that portion of the unpaid principal amount of the loan exceeding four thousand dollars and not exceeding seven thousand dollars; and twenty-one (21%) per cent per year for that portion of the unpaid principal balance amount of the loan exceeding seven thousand dollars until this note is paid in full....
In denying Tower’s claim for contractual interest, the trial court stated:
As recognized by the 4th Circuit [in # 96-1529] the technical deficiency in the pleadings did not cause anything to happen that would not have happened had the proper grounds been stated, and while that technical error would not prevent Tower from recovering the sum in question (the deficiency amount), they should not benefit from their error by obtaining [contractual] interest [as specified in the hand note]. The seizure that took place was made on a petition that failed to state the correct grounds, but was a legitimate exercise of Tower’s right to proceed under executory process based on the note’s demand feature. Similarly, the Raos had a right to challenge that technical error. Tower Partners L.L.C. should not be allowed to benefit from its error, albeit technical. *132 Interest, consequently, should not accrue while the litigation was pending.
The trial court cited no statutory or jurisprudential authority for its conclusion that the contractual interest rate should not apply.
La. C.C. art.2000 states that “[w]hen the object of the performance is a sum of money, damages for delay in performance are measured by the interest on that sum from the time it is due, at the rate agreed by the parties.... ” The rate agreed to by the parties in the case before us is that stated in the promissory hand note. However, Tower’s foreclosure suit, as amended, sought only interest on the unpaid amounts at the rate of 10% per annum. Tower is bound by the rate of interest that it sought to collect in the foreclosure suit (being in the nature of a judicial | mconfession on that issue); it cannot in the deficiency suit claim that a different higher rate of interest should be applied to the remaining debt owed. By analogy, see, Diamond B. Const. Co., Inc. v. Department of Transp. & Development, 2002-0573, pp. 10-11 (La.App. 1 Cir. 2/14/03), 845 So.2d 429, 436. If it had sought the higher interest (the 21% to 36% per annum) in the foreclosure suit, then it might be entitled in the deficiency suit to recover the higher interest. The rate of interest due on the debt of the Raos is that specified in the amended foreclosure suit.[5] That rate of interest is 10% per annum. It is not interest at the judicial rate. However, we understand and read the trial court’s 2 July 2002 judgment as preventing Tower from collecting interest on interest or on attorney’s fees. We amend the judgment accordingly.
For the foregoing reasons, we affirm the trial court’s judgment overruling the ex-eeption of res judicata and amend the judgment to correct the interest due.
AMENDED; AS AMENDED, AFFIRMED.
CANNIZZARO, J., dissents with reasons.

. The collateral mortgage is a mortgage device used in Louisiana whereby property can be mortgaged to secure existing obligations, future obligations, and obligations created contemporaneously with the execution of the collateral mortgage. The collateral mortgage does not directly secure a debt. Instead, it secures a collateral mortgage note generally made payable on demand to the order of bearer. The collateral mortgage note can then be pledged to a creditor as security for a promissory note (or other obligation) actually owed to the creditor. For a discussion of the collateral mortgage device, see Max Nathan, Jr. and H. Gayle Marshall, The Collateral Mortgage, 33 La. L.Rev. 497 (1973).

. We note that the purported verification attached to the original petition for executory process states that the Tower was seeking interest “[t]o be calculated” at the rate of 12% per annum from 9 September 1988, until paid, on the $51,185.32. The petition was amended on 13 September 1994 to change the interest rate to 10% per annum (the percentage stated in the promissory hand note) from 9 September 1992, until paid.

. Another way of saying this is that because Tower’s cause of action for a deficiency arose after the injunction/damage suit was filed, a reconventional demand was mandatory only for a cause of action that existed when the Raos filed suit, not for a subsequent arising cause of action.

. Although Tower briefed the issue to us, the Raos did not.

. In a sense, the 10% interest rate is res judicata between the parties.